RIGGS *v.* LINDSAY.

*Absent....*TODD, J.

The Defendants having ordered the Plaintiff to purchase salt for them, and to draw on them for the amount, and he having so purchased and drawn, they are bound to

ERROR to the Circuit Court for the district of Columbia, in an action of assumpsit, in which the verdict and judgment were in favor of the Plaintiff, Lindsay.

The case was now argued by JONES and HARPER. for the Plaintiff in error; and by F. S. KEY and MORSELL, for the Defendant.

The former contended, that Riggs was not to be considered as a joint contractor, but a sub-purchaser; and

that if the Defendants were *jointly* interested in the purchase, they were *severally* interested in the sales. In support of this position, they cited *Watson on Partnership*, 24. 1 *Vez.* 242. *Cowp.* 449. 2 *H. Bl.* 298. *Doug.* 371. & 1 *H. Bl.* 37.

The facts of the case are stated in the opinion of the Court, which was delivered as follows, by

**LIVINGSTON, J.**

'This was an action brought by the Defendant in error, in the Circuit Court of the United States for the district of Columbia, against William Stewart, Charles J. Nourse, Aquila Beall, and the Plaintiff in error, Elisha Riggs, as co-partners, to recover from them the amount of certain bills of exchange and damages which had been drawn on them by the Defendant in error to reimburse him for certain salt which he had purchased on their account, and which bills, being protested for non-payment, were afterwards paid, with damages, by the Plaintiffs below. The Defendant, Beall, was not found—the Defendants; Nourse and Stewart, confessed judgment, and the other Defendant, Riggs, pleaded the general issue.

The declaration contained several counts on the bills of exchange, and two general counts, the one for money laid out, expended and paid, the other for money had and received, under which last counts a verdict was found for the Plaintiff.

It appeared in evidence, that some time in November, 1809, Stewart and Beall, two of the Defendants below, wrote a letter to the Plaintiff, ordering a purchase of salt, and stating that two other persons were concerned in the said order. This letter directed him to purchase from 10 to 30,000 bushels, and authorized him to draw for the amount of such purchases on the Defendants, Stewart and Beall, or on George Price and Co. of Baltimore. Purchases of salt were accordingly made by Lindsay, who from time to time apprized Stewart and Beall of the same. On the 4th January, 1810, one of the Defendants wrote to Lindsay as follows :

accept and pay his bills; and if they do not, he may recover from them the amount of the bills and damages and costs of protest (if he has paid the same) upon a count for money paid, laid out, and expended, and the bills of exchange may be given in evidence on that count. If one Defendant produce in evidence a letter from his co-defendant to the Plaintiff, the latter may give in evidence the written declarations of that co-defendant to discredit the letter. If, after the protest of the bills, the Plaintiff sell the salt without orders, it shall not prejudice his right of action, although he render no account of sales to the Defendants.

RIGGS
v.
LINDSAY.

"SIR,

"You will hold up what salt you may have purchas-"ed, and send us a statement of your purchases.  You "have no doubt received Stewart and Beall's orders, re-"questing no further purchase.  We shall some time "hence direct you as to the disposal of the quantity "purchased.  In the mean time you may draw upon us, "or upon Stewart and Beall for the amount," &c.

It appears that Lindsay afterwards drew several bills of exchange on the parties who had subscribed the last mentioned letter, and who were the Defendants, in favor of certain persons therein named, including his com- mission for purchasing.  These bills were presented to the drawees, who refused to accept or pay the same, on which they were protested and returned to Lindsay, who took them up.  By the laws of South Carolina ten per cent. damages are allowed on the return of such bills under protest, and there was proof that these damages had also been paid by Lindsay.  After the return of these bills and payment of them by Lindsay, he sold the salt, and the proceeds on such re-sale were stated by Lindsay's counsel at the trial to the jury, who were de- sired to deduct the same from his demand against Riggs, which was done, and a verdict given for the balance. There was no other evidence of the proceeds than such admission, and the Defendant, Riggs, denied that the sum stated by Lindsay's counsel was the amount thereof.

In the course of the trial, the counsel of Riggs pro- duced a letter from Nourse to the Plaintiffs, which, as he supposed, contained a statement favorable to his client. To discredit this statement, the Plaintiff produced cer- tain interrogatories, which had been exhibited to Nourse, with his answers, which were at variance with the let- ter produced by Riggs.

The first exception taken, at the trial, to the conduct of the Court, was to its admission of proof of the seve- ral bills which had been drawn by Lindsay, and pro- tested and paid by him, and the instruction which it gave to the jury, that under the count for money paid, laid out, and expended, Lindsay might recover, not his

commissions which were included in the bills, but the ten per cent. damages, if the jury were satisfied that they had been actually paid by him.

Neither in the admission of this testimony, nor in the instructions given on it, was any error committed by the Circuit Court. As Lindsay was expressly authorized to draw, by the letter of the 4th of January, 1810, he certainly had a right to do so, and whether the Defendants accepted his bills or not, so as to render themselves liable to the holders of them, there can be no doubt that as between Lindsay and them, it was their duty, and that they were bound in law to pay them. Not having done so, and Lindsay in consequence of their neglect having taken them up, he must be considered as paying their debt, and as this was not a voluntary act on his part, but resulted from his being their surety, (as he may well be considered from the moment he drew the bills) it may well be said that in paying the amount of these bills, which ought to have been paid, and was agreed to be paid by the drawees, he paid so much money for their use. Nor can any good reason be assigned for distinguishing the damages from the principal sum, for if it were the duty of the Defendants to pay such principal sum, it is as much so to reimburse Lindsay for the damages which, by the law of South Carolina, he was compelled to pay, and which may therefore also be considered as part of the debt due by the Defendant in consequence of the violation of their promise contained in the letter which has just been mentioned.

The second exception which appears on the record is to the admission of certain interrogatories which had been propounded to the Defendant, Nourse, with his answers to the same, having an indorsement upon the same, purporting to be an acknowledgment of Nourse that the same were correct.

In the opinion of this Court, this paper was rendered proper evidence by the conduct of the Defendant, Riggs, who had read as evidence for himself a letter from Nourse to Lindsay, dated the 14th April, 1810, containing, as he supposed, some matters favorable to his defence. This letter having been thus produced by Riggs him-

self, it was certainly right to allow Lindsay to discredit the representations made in that letter by shewing that Nourse had himself at another time given a very different account of the same transaction.

The other opinions of the Court below, to which exceptions were taken, may be comprised in these two ; that the Court erred in thinking the Defendants jointly liable as co-partners, and that the re-sale of the salt did not destroy the Plaintiff's right of action. In both these opinions, this Court concur with the Circuit Court.

It is perhaps as clear a case of joint liability as can well be conceived. Whatever doubt there might be independent of the letter of the 4th of January, 1810, most certainly that letter puts this question at rest. Every one of the Defendants sign it, and there is now no escape from the responsibility which they all thereby incurred to the Plaintiff. Nor did Lindsay's selling the salt after he had taken up these bills, destroy his right of action against the Defendants. If he has acted irregularly in so doing, he will be liable, in a proper action, for the damages which the Defendants have sustained by such conduct, but such sale could not be pleaded or set up in bar to the present suit. Nor will the Defendant, under the circumstance of this case, be injured by the sum which the jury have discounted from Lindsay's demand, if it shall hereafter appear that as much was not allowed the Defendants on that account as ought to have been.

The judgment of the Circuit Court is affirmed, with costs.