GEORGE H. BOWEN & others *vs.* ALDEN D. STODDARD.

An acceptor of a bill of exchange is not liable to the payee or indorsee for damages caused by non-payment, but only for the amount of the bill, with interest and costs of protest

The relation between the master of a vessel and his owners is not such that they thereby become liable as acceptors of a bill of exchange drawn on them by him in a foreign port, for supplies furnished to the vessel.

A usage among the owners of vessels at particular ports to pay bills, drawn by masters for supplies furnished to their vessels in foreign ports, cannot bind them as acceptors of such bills.

ASSUMPSIT to recover damages on a bill of exchange, the principal and interest of which had been paid. Trial before *Shaw,* C. J. whose report thereof was as follows :

The plaintiffs were G. H. Bowen and F. D. Atherton, resident in Valparaiso, in South America, and E. F. Loring, resident in Boston, together constituting a partnership and house of trade, doing business in Valparaiso. The defendant was agent and one of the owners of the whaling vessel Draco, out of New Bedford, of which Peleg Ray was master. The bill was drawn on the defendant by Ray, at Talcuahana, on the 19th of May 1842, in favor of E. F. Loring & Co. or order, for the sum of $1802, purporting to be for value received by Ray for the disbursements of the Draco under his command, and was remitted to Loring, the partner residing in

Boston. Under his direction it was presented to the defendant for acceptance on the 21st of September 1842, and for payment on the 14th of October following, and was in both cases protested.

The case was opened for the plaintiffs as presenting the question whether the master of a whaling vessel abroad, by virtue of his office, and without special authority, has power to draw bills on his owners for supplies furnished to such vessel, and whether the owners, on whom such bills are drawn, without actual acceptance, are bound as acceptors, so as to be chargeable for damages as on foreign bills.

It appeared that the defendant was one of the principal owners of the Draco ; that he acted as agent for the other owners in fitting her out and during her voyage ; but that, about the time of her return, he relinquished the agency and settled the voyage.

As the non-joinder of the owners, as defendants, was not pleaded in abatement, it was ruled that, if the owners were liable as such, the suit might proceed against the defendant alone.

The plaintiffs, after reading the bill of exchange to the jury, offered evidence to prove the usage of masters and owners of whale ships. This evidence, though objected to by the defendant, was admitted. (Here the judge stated the evidence in full ; but the decision of the cause renders it unnecessary to report it.)

It appeared in evidence that the master of the Draco had given to the plaintiffs, as collateral security, a bill of lading for 3604 gallons of oil, which bill accompanied the bill of exchange, and was presented with it, when the latter was presented for acceptance ; and that the plaintiffs demanded the oil, after the arrival of the vessel, but never obtained possession of it.

Isaiah F. Terry testified that he was appointed agent of the Draco, on her return in June 1843 : That he was directed by the owners to pay all the drafts and debts against the vessel, and that he had funds from the sale of the cargo : That he

was called on by the plaintiffs' counsel, for payment of this bill, and that he tendered to the counsel, and afterwards to Loring, one of the plaintiffs, in Boston, the amount of the bill, with interest and costs of protest, which was not accepted: [The witness also testified to offers of settlement made by him, and by the plaintiffs and their counsel, at different times, and to conversation when the receipt hereinafter set forth was given — which is rendered immaterial by the decision of the cause.]   And that he paid the said amount with interest and costs of protest, on the 23d of September 1843, to the plaintiffs' counsel, and took a receipt, of that date, of the following tenor:  "I. F. Terry, Esq. of Fairhaven, has this day tendered to me, as attorney of E. F. Loring & Co., the sum of nineteen hundred and ten dollars and fifty five cents, in full of all claims which the said Loring & Co. have against the barque Draco, of Fairhaven, of which he is agent.   I have received the above amount of money of him.

H. G. O. Colby, attorney of E. F. Loring & Co."

It was admitted that, previously to this settlement, a process *in rem*, in the admiralty, had been instituted by the plaintiffs against the barque Draco, for the same supplies for which the said bill was drawn, in which process judgment had been rendered against the plaintiffs.   [There was also testimony, not material to be stated, as to the conversation, at the time the said payment was made, concerning the extent of the satisfaction thereby intended to be given and received.]

No evidence was offered to show that the plaintiffs had been called on to pay damages to any former holder of the bill.

The defendant insisted that, upon this evidence, the plaintiffs had no legal claim to damages on the bill.   By consent, the case was withdrawn from the jury, to be submitted to the whole court, with authority to draw such inferences of fact from the evidence, as a jury could properly do, and to enter judgment on nonsuit or default, as in their judgment the merits of the case require.

*Clifford*, for the plaintiffs.   The master had a right to

32 *

draw, and the drawee was therefore bound to pay. If the bill had been returned to the plaintiffs, they would have had a right to recover twenty per cent., and they have the same right now, to avoid circuity of action. Story on Bills, §§ 119, 398, 399. Chit. on Bills, (8th ed.) 665. Bayley on Bills, (5th ed.) 353. 3 Kent Com. (3d ed.) 115 – 120. *Francis* v. *Rucker,* Amb. 672.

*Coffin,* for the defendant. As the defendant never accepted the bill, and neither promised nor was bound to accept it, he was no party to it, and in no way liable on it. See *Laing* v. *Barclay,* 1 Barn. & Cres. 398. *M'Evers* v. *Mason,* 10 Johns. 215. Bayley on Bills, (2d Amer. ed.) 166. Damages are never demandable of a drawee, though he becomes acceptor, and refuses to pay ; *a fortiori,* if he does not accept. *Bain* v. *Ackworth,* 1 Rep. Con. Ct. (S. C.) 107. *Woolsey* v. *Crawford,* 2 Campb. 445. *Napier* v. *Shneider,* 12 East, 420. *Dawson* v. *Morgan,* 9 Barn. & Cres. 620. Besides ; damages are an incident only, for which alone an action will not lie. And finally, the plaintiffs have discharged the defendant by the receipt of September 23d 1843.

HUBBARD, J. It is agreed that the face of the bill declared on, and the interest and cost of protest, have been settled, and the only claim of the plaintiffs is for the unpaid damages, which they state to be twenty per cent. The plaintiffs are the payees of the bill and have not been compelled, or called upon by any holder, to pay the damages in consequence of its not being honored by the drawee at maturity. And assuming here that the defendant was chargeable, as the acceptor of the bill, the first question is, whether the acceptor of a bill of exchange is liable for damages in a suit brought against him upon the bill by the indorsee.

Damages upon a bill of exchange are the indemnity which the law merchant provides for parties who are injured by the dishonor of the bill, and are intended to cover the expense and loss occasioned by the necessity of protesting and redrawing for reimbursement. But the rates of exchange proving, from unseen causes, so fluctuating and uncertain, liquidated

damages have long since been substituted in this Common-
wealth, as furnishing a more just measure of indemnity to the
suffering party ; varying, however, as to their amount, accord
ing to the distance or difficulty of communication between
the places where the bill is drawn and where payable. But
the liability to make good the loss arising from the dishonor
of the bill, and the promise to indemnify, are the risk and un-
dertaking of the persons who draw, and of those who negotiate
the bill, because it is received by the holder on the faith of
the undertaking that it will be accepted and paid by the
drawee.

But the drawee is not a party to this agreement ; and if he
does not accept the bill, the holder has no claim upon him.
If, however, the bill is accepted, no other agreement exists
between the holder and the acceptor, than a simple engage-
ment by the acceptor to pay the face of the bill at maturity.
And if he fails to perform his engagement, he is liable, in an
action, for the amount of the bill and interest, and the costs of
protest for non-payment. But he is not liable for damages.
It is no part of his contract to pay them ; and the bill, when
satisfied by him, is paid at the place where it was made pay-
able, and the party does not require, nor is he, in such case,
entitled to the damages for the reëxchange. The holder, on
protest for non-payment, may pursue his remedy against the
acceptor, drawer and indorsers ; but if he follows the acceptor
to judgment, he cannot charge him with damages. We know
of no case where such a rule has been laid down, nor do we
perceive a reason for now establishing one. See *Bain* v.,
*Ackworth*, 1 Rep. Con. Ct. (S. C.) 107. Nor are we aware
that any such practice has prevailed among merchants.

In cases where drawers have been obliged to take up bilis
and pay the damages, because the acceptors suffered them to
be protested, when they had funds of the drawers in their
hands, and were, as between themselves and the drawers,
bound to accept, they may recover such damages of the ac-
ceptors ; because the loss is occasioned by their default and
neglect. This rests, however, on the relations existing be-

tween them, and not on the ground that an acceptor, as such, is liable to pay damages by reason of his acceptance.  *Riggs* v. *Lindsay*, 7 Cranch, 500.

It has been argued, that as the master would be compellable to pay damages to the holder in consequence of the non-payment of the bill, and could therefore recover them of his owners, by reason of his right to draw on them, they should now be chargeable with damages, as acceptors, to prevent circuity of action.  But this principle does not apply ; for the drawer's liability is contingent merely, and he may never be charged ; and till the drawer is thus charged, and actually pays the damages, no such claim exists on his part against the acceptor.

But we think the defendant is not chargeable as the ac ceptor of this bill, on the ground that there is no such legal relation between the master of a vessel and his owners, that they become, by force of such relation, acceptors of a bill of exchange drawn by him in a foreign port for supplies for the vessel.  The rights and duties of a master are well defined, as to his authority to bind his owners for supplies and repairs in a foreign port.  His agency, as master, is sufficient to bind them for the payment ; and to enable him also to obtain the credit, he may pledge the vessel by bottomry contract, and hypothecate the freight and cargo belonging to the owners ; but he cannot draw bills of exchange, and bind them in law as acceptors, from the fact that the bills are drawn for supplies. The law imposes no such liability upon them, and places no such temptation in the hands of the master to exceed his authority.

There was an attempt at the trial to prove that it was the usage among the merchants of New Bedford and Fairhaven, engaged in the whaling trade, to accept the bills of their masters drawn for supplies furnished abroad.  But the evidence fell short of establishing it.  The proof reached no farther than this ; that there was such confidence subsisting between the owners and masters, that bills drawn on the owners for supplies are generally accepted ; but that the owners claim the right to refuse

them, if from any cause they doubt the integrity of the master in the application of the funds received by him. The practice, it is said, has hitherto been found convenient; but this convenience results from the integrity of the masters, and the honorable character of the owners. Still, if it were more clearly established as a usage, yet it is not such a one as can charge the owners as acceptors; for a usage, to be legal, must be reasonable as well as convenient; and that usage cannot be reasonable, which puts at hazard the property of the owners at the pleasure of the master, by making them responsible as acceptors on bills drawn by him, and which have been negotiated on the assumption that the funds were needed for supplies or repairs; and no evil can flow from rejecting such a usage; because owners, who have confidence in the judgment and discretion, as well as integrity of their shipmasters, can give them, at their pleasure, a limited authority to draw, which will furnish them with credit, and protect them from imposition.

In regard to the point, whether the sum paid and received was in full of the plaintiffs' demand, if damages had otherwise been a just item of claim, it is unnecessary to determine; the case being clear on the other questions which have been considered.

*Plaintiffs nonsuit.*