### PLATO v. REYNOLDS et al.

If a bill of exchange, payable in a specified length of time after date or on a day certain, be presented for acceptance on the day it is due, and if acceptance be then refused, no further demand of payment is necessary to charge the drawer or indorser.

It is inadmissible to discredit a witness by contradicting him in respect to a merely collateral fact, as to which he testified on cross-examination without objection.

APPEAL from the Supreme Court. Action on a bill of exchange for $3,627.10, drawn by Reynolds & Wagner, the defendants, on Peter Uhler, payable to the order of Miles & Bartlett, one day after its date, September 8, 1856. The trial was before a referee.

The consideration of the bill was the sale and delivery, by the payees to the drawers (the defendants), of 393 stock hogs. These hogs were purchased on the 2d September, 1856, at the drove yards in New York, and sent to Uhlersville, in Pennsylvania, where they arrived on the 4th September. Some of them exhibited symptoms of disease on the way; four died before reaching Uhlersville; and over seventy died within ten days thereafter. The disease of which they died was hog cholera, and the yards in New York, in which the hogs were kept before the sale, had been used for keeping hogs which had this disease. All of the hogs alive on the 14th September were, by agreement between Miles & Bartlett, the vendors,

Peter Uhler, and Reynolds & Wagner (the defendants), returned to New York, and there delivered (together with other hogs purchased about the same time, by the same parties, of Cassius Stiles) to Miles & Bartlett, who sold the hogs so delivered to them for account of Reynolds & Wagner, and realized from such sale the sum of $2,286.83, over and above charges.

The referee ordered judgment for the plaintiff, which was affirmed at general term, and the defendants appealed to this court. The questions raised, and such other facts as are material, sufficiently appear in the following opinions.

*B. W. Bonney*, for the appellants.

*Amasa J. Parker*, for the respondent.

MARVIN, J. A question much litigated on the trial was, whether the hogs were sold by Miles with a warranty of soundness. Dalton was the agent of the defendants and made the purchase, and testified that Miles guaranteed that the hogs were sound. On cross-examination by plaintiff, he stated that he bought a lot of hogs the same day of Cassius Stiles; that he warranted them; that witness believed he gave about the same warranty Miles gave. Stiles was a witness for the plaintiff, and stated that he did not warrant the hogs he sold to Dalton; that he told Dalton they were healthy to all appearance. The witness was then asked: What was said, if anything, between you and Dalton about warranting the hogs? The defendants objected to this question, the objection was overruled, and the defendants excepted. The answer was, that Dalton said, Now I buy these hogs for sound hogs. Mr. Pratt, who owned them and was present, replied, I sell them for sound hogs now, but I won't warrant them; a week from now, I will not say what they will be. This was after the hogs were weighed. Whatever the contract was between Dalton and Stiles, it had no connection with the contract between Dalton, the agent of the defendants, and Miles; it was entirely collateral and in no way involved in the issue tried. The authorities cited by the de-

fendants' counsel, show that a witness cannot be cross-examined as to any distinct collateral fact, for the purpose of afterwards impeaching his testimony by contradicting him; and if the witness answered such question, the answer must be taken as conclusive, and no evidence can be afterwards admitted to contradict it. This rule will not exclude the contradiction of the witness as to any facts immediately connected with the subject of inquiry. (1 Stark. Ev., 134, § 22 ; 1 Greenl. Ev., §§ 448, 449 ; *Harris* v. *Wilson,* 7 Wend., 57; *Howard* v. *The City Fire Ins. Co.,* 4 Denio, 502.) Questions touching facts not involved in the issue, may sometimes be put to the witness upon cross-examination, for the purpose of affecting his credit or discovering the truth, and the latitude of inquiry rests generally in the sound discretion of the court. His answers, however, will be conclusive, and he cannot, touching these collateral facts, be contradicted by other witnesses. (See case last cited, and Stark. Ev., part 2, §§ 22, 28, and 1 Greenl. Ev., § 449.)

*Spencely* v. *De Willott* (7 East, 108) is a case generally cited in support of these rules. In that case, it was not permitted to cross-examine the witness as to other contracts, made the same day, with other persons, in order to show that the contracts in question were of the same nature and not usurious, if the witness should answer one way, or to contradict him if he answered the other way. In that case the court say, whatever contracts the witness might have entered into with other persons for other loans, they could not be evidence of the contract made with the defendant, unless the witness had first said that he had made the same contract with the defendant as he had made with those persons, which he had not said.

In the case we are considering, the witness Dalton stated that Stiles warranted the hogs he bought of him, and he believed that Stiles gave about the same warranty Miles gave. This statement was all made, however, upon cross-examination, and all the facts it includes were collateral and come within the rule making the answers conclusive. The case put in East., *supra,* is when the witness states, in his direct examination, for the purpose of proving the contract and its terms,

that he made a contract the same as another contract made with another person. In such a case, the terms of the contract made with the person referred to, would undoubtedly be open to inquiry, for the very purpose of ascertaining the terms of the contract in issue. In my opinion, the referee erred in permitting the witness Stiles to state the contract between him and Dalton, and what was said about warranting the hogs. This testimony had no relevancy to the issue and it was not competent to impeach Dalton. The credit of Dalton, as a witness, was very material to the defendants, and it was undoubtedly much affected by this illegal evidence. The judgment should, for this reason, be reversed, and there should be a new trial.

[The learned judge then proceeded to discuss another question, in respect to which the majority of the court differed from him, as follows:]

There is another question in the case, which I have examined with some care, and as to which I am in some doubt. The action is upon a bill of exchange, drawn by the defendants upon one Uhler, who resided in Pennsylvania. It bears date New York, September 8, 1856, and is payable one day after date. It became due on the 12th September, and on that day it was presented to the drawee, Uhler, for acceptance, and Uhler refused to accept. No presentment for payment was made, and the question is, Was the presentment for acceptance in due time? The position of the defendants' counsel is, that the bill was due when it was presented, and that it was too late to present it for acceptance. He cites Chitty on Bills, and Story, and Kent's Commentaries. Chitty (p. 272) says: " The holder of a bill always has a right to present for and insist on acceptance, even so late as the day before the bill falls due." Story (§ 231) says: "If the bill be drawn, payable at a certain time after date, it must be presented before, or at the time when, it arrives at maturity." He cites *Gaupy* v. *Hardin* (7 Taunt., 159), in which the bill was payable thirty days after sight; also *Bachellor* v. *Priest* (12 Pick., 398), in which the bill was payable four months from date, and it was

presented for acceptance more than a month before it was due, and acceptance was refused. It was held that the bill was presented for acceptance in due season. Also, *Townsley* v. *Sumrall* (2 Pet., 170), in which it was held that a bill payable at a given time after date, need not be presented for acceptance, and that payment may be at once demanded at its maturity. These cases do not touch the question whether presentation for acceptance on the day the bill is due, is in time.

Kent, in his Commentaries (vol. 3, 82), says: " A bill payable on a day certain after date, or on demand, need not be presented for acceptance before the day of payment or demand, and if not presented previously for acceptance, the right to require acceptance becomes merged in, or, as Pardessus says, confounded with, the right to demand payment; but if presented before it becomes due, and acceptance be refused, it is dishonored, and notice must then be given, forthwith, to the parties whom it is intended to charge." He cites *Bank of Washington* v. *Triplett* (1 Pet., 25), and *Allen* v. *Suydam* (20 Wend., 323, 324). These were cases against agents for neglect to present the bills promptly for acceptance. They do not reach the point in question here. Chancellor WALWORTH, in *Allen* v. *Suydam*, in speaking of the general rule, says that the drawer or indorser of the bill is not discharged by the neglect of the holder to present the same for acceptance immediately, or until the time when it becomes due and payable. In another connection he says, if the holder neglects to present the bill for acceptance until it becomes due, and the drawer fails in the meantime, the drawee may then refuse to accept. This is the case cited by the plaintiff's counsel in this case. He also cites Edwards on Bills, 387.

The language of the chancellor would seem to imply that the bill may be presented for acceptance on the day it becomes due. There was no such point in the case, and no authority in support of such position is cited. I think that the question made in this case was not present in the chancellor's mind at the time of writing.

In the absence of any controlling authority, we must examine the question upon principle. And the question is not simply whether a bill of exchange may be presented to the drawee for acceptance at the time it is due, but it also includes the question whether the drawers will be liable upon the refusal to accept at that time and notice of such refusal, no demand of payment being made.

As we have seen, it is not necessary, as to the liability of the drawer, that the bill should be presented for acceptance. If it is duly presented for payment, and payment is refused, and the·drawer has notice, he remains liable. If duly presented for acceptance, and there is a refusal to accept, notice must be given to the drawer, and the holder may at once resort to him by action, though the time for the payment of the bill has not arrived. It seems to me, however, that if the holder waits until the bill is due before presenting it for acceptance, that he should then demand payment, and if payment is refused, he should give notice of those facts to the drawer, and that unless he does so, the drawer will be discharged. The time having arrived when the holder is entitled to payment, and not having previously required acceptance, the duty is devolved upon him of demanding payment of the drawer, and in case of refusal to pay, of giving notice of such demand and refusal. Why require acceptance, when, if the bill is accepted, he will be obliged, at once, to demand payment, in case he intends to preserve the liability of the drawer? I can see that a holder of a bill may be willing to discharge the drawer, and look to the acceptor alone and give him indulgence, and in such a case he may present the bill for acceptance on the day it is due, and if accepted, the acceptor will be liable, and as to him, no demand of payment need be made. The undertaking of the drawer is, that in case the bill is duly presented for acceptance, the drawee will accept, and that he will pay the bill upon due presentment for payment, whether it has been presented for acceptance or not; and if the drawee refuses to accept upon due presentment for such purpose, or refuses to pay, in case payment is

demanded at the maturity of the bill, and notice of such refusal is given, then that the drawer will pay. His liability is conditional. In my opinion, if the holder neglects to require acceptance until the bill is due, in the language of Kent, his right to require acceptance becomes merged in or confounded with the right to demand payment.

I think, as the evidence appeared in this case, that the defendants, as drawers of the bill, were discharged, and that the referee erred in refusing to nonsuit the plaintiff, and that for this reason the judgment should be reversed, and there should be a new trial.

WRIGHT, J. The bill which was drawn, payable one day after date, was presented·to the drawee for acceptance on the day it matured; acceptance was refused, and it was protested for non-acceptance. The certificate of the notary states that on the same day (12th September) he forwarded written notice, by mail, to the drawers (the defendants) and indorsers (Miles & Bartlett), informing them of the non-acceptance thereof. It was also proved that on the following day the payees (Miles & Bartlett) received the original draft, with notices of protest for themselves and the defendants, and caused such notice to be served on the latter that day. The drawee also informed one of the defendants, on the 12th September, at the office of the payees, that he had not accepted or paid the draft. In view of this proof, I think the referee did not err in refusing to dismiss the complaint, and in deciding that the bill was duly presented and protested, and that due notice was given to the defendants to charge them as drawers. The defendants claim that the draft being due when presented, and demand made by the notary, it was then too late to present it for acceptance, and presentment for acceptance of a bill which is due, is not sufficient to charge the drawers. But it is well settled that the holder of a bill, payable a specified length of time after date, or on a day certain, need not, for the purpose of charging the drawers and indorsers, present it for acceptance until it becomes due and payable. It may be presented before or at the

time of its maturity. (Edwards on Bills, 387; Story on Bills, § 231; *Allen* v. *Suydam*, 20 Wend., 321; *S. C.*, 17 Id., 368.) The evidence to show notice was enough, if credited, to justify the finding of the referee. He had, in the first place, the certificate of the notary that he forwarded, on the day it was protested, written notice by mail to the drawers, of the non-acceptance of the draft. It was furthermore shown that the original draft, and notices of protest for non-acceptance, were received in New York by the payees, and that the notice directed to the defendants was served on them by a clerk of the payees and indorsers; and the proof tended to the conclusion that this service was on the 13th September, the day following the presentment and protest. It likewise appeared that on the 12th September, one of the drawers was verbally informed by the drawee that he had dishonored the bill.

A written or verbal notice to the drawers, of the non-acceptance of the draft, the day following the presentment and demand, was sufficient to charge them. Indeed, in this case, it is not clear that any notice to the drawers, of the dishonor of the bill, was necessary, they being the original debtors.

It conclusively appears that neither the defendants, nor Uhler, for whom the hogs were purchased, ever realized any value or advantage whatever from the sale and delivery of the hogs. But this alone would be no defence if they were not warranted sound, healthy, and free from disease; or if they had not been, before the sale, exposed to, and at the time of such sale were not affected with the disease called cholera, and those that died did not die of any contagious disease contracted before the sale, there would be no failure, wholly or in part, of the consideration of the bill in suit. The defendants would not be absolved from liability, if without fault or error on the part of the vendors the speculation resulted disastrously to the vendees. Were we at liberty to look at the evidence, and form our own conclusions of fact therefrom, it is possible that we might differ with the referee in respect to his finding. But the facts found by him cannot be questioned in this court. (*Bond* v. *Spelman*, 4 Comst., 284; *Griscom* v. *The Mayor of New*

York, 2 Kern., 586; *Western* v. *The Genesee Mutual Insurance Company*, 2 id., 258.) He has found that Miles & Bartlett did not, on the sale of the hogs to the defendants, warrant them to be sound, healthy and free from disease, but refused to do so; and that before such sale they had not been exposed to, and at the time thereof were not affected with any cholera, and that those of them which died after the sale and delivery to defendants did not die of any contagious disease contracted before the sale. This is substantially a finding that the hogs were sold without any warranty that they were free from disease, and that in fact at the time of the sale and delivery, they were not infected with any contagious disease, subsequently causing the death of any of them. Of course, if they were sold without warranty, and were not infected at the time of such sale with the disease of which some of them afterwards died, occasioning thereby a loss to the defendants, there could be no pretext for repudiating the contract of sale, or alleging a total or partial failure of consideration for the draft. So, also, if there were a warranty, and the hogs were free from disease and infection at the time of sale and delivery, but subsequently contracted a contagious disease, of which some of them died, there would be no breach of warranty, and no ground for questioning the consideration of the draft. There was no error, therefore, in the legal conclusion of the referee, upon the facts found by him, that the sale and delivery of the 393 hogs were a good consideration for the drawing of the bill in question, and that such consideration had not failed wholly or in part.

There was a single objection by the defendants on the trial to the admission of evidence. This objection the court regards as well taken, and of sufficient importance to require a re-trial of the case. One Cassius Stiles, a hog dealer in the city, about the time of the purchase from Miles & Bartlett, sold to the defendants, for Uhler, 133 hogs. Dalton, who acted for defendants in the purchase of both lots, and who swore to Miles & Bartlett's warranty, and what Miles said about the hogs, on his cross-examination by plaintiff's counsel, testified

Plato *v.* Reynolds.

"that he bought a lot of hogs of Cassius Stiles the same day; he warranted them; he believed that he gave about the same warranty Miles · gave." Subsequently Stiles was produced as a witness by the defendants. On his cross-examination by the plaintiff he testified to the sale of his lot of hogs. The question was then put to him: "What was said between you and Dalton about warranting the hogs? The question was objected to by defendant's counsel, the objection overruled, and the witness proceeded to narrate the conversation and statements made at the time his hogs were sold. Any inquiry as to Stile's sale was, of course, collateral and irrelevant to the issue, and the plaintiff could not cross-examine Dalton as to a warranty made by Stiles, merely for the purpose of contradicting him by other evidence, if he should deny it, thereby to discredit his testimony. If a question relative to a distinct collateral fact be put and answered, evidence cannot afterwards be adduced for the purpose of contradiction. This was the effect of the question objected to and the reply. On the plaintiff's cross-examination, Dalton had testified "that Stiles warranted his hogs; he believed he gave about the same warranty Miles gave." This was a collateral fact; and it was not competent to contradict the witness in respect thereto. He could not thus be impeached or discredited. It was important to discredit Dalton, as he was the only witness who testified to Miles & Bartlett's warranty; but it could not be done by contradicting him as to a collateral matter.

For this error the judgment must be reversed, and a new trial ordered, with costs to abide the event.

All the judges, except MARVIN, J., agreed that a refusal to accept on the day payment is due is equivalent to a refusal to pay, and renders a demand of payment unnecessary. On the question of evidence, all the judges concurred.

Judgment reversed, and new trial ordered.