PENDLETON and others *v.* THE KNICKERBOCKER LIFE INS. CO.

*(Circuit Court, W. D. Tennessee.   May 19, 1881.)*

1. LIFE INSURANCE — NEGOTIABLE DRAFT FOR PREMIUM — NON-PAY-
   MENT—FORFEITURE.

   If a life insurance company take a negotiable draft in payment of
   the premium, it is subject to all the requirements of the commercial
   law in regard to presentment for acceptance and payment, and notice
   of non-acceptance or non-payment, which must be given or excused
   to entitle the company to the benefit of a forfeiture provided for in
   the policy, and the draft itself, if it shall not be paid at maturity.
   The charge of the court in this case, reported in 5 FED. REP. 238,
   re-affirmed on motion for a new trial.

2. SAME SUBJECT — NEGOTIABLE INSTRUMENT — WAIVER OF PROTEST
   AND NOTICE.

   A draft in the following words is negotiable under the law mer-
   chant, and entitled to protest and notice, although the policy to which
   it refers contains a clause that the policy shall be void, *"without
   notice to any party or parties interested herein,"* if the said draft shall
   not be paid at maturity, viz.:

   " $325.                                        AUBURN, ARK., July 14, 1871.
   " Three months after date, without grace, pay to the order of the
   Knickerbocker Life Insurance Company three hundred twenty-five
   dollars, value received, for premium on policy No. 2346, which pol-
   icy shall become void if this draft is not paid at maturity.
                                                    " S. H. PENDLETON.
   *" To Moses Greenwood & Co., New Orleans, La."*

Motion for New Trial.

This was an action on a policy of life insurance for $10-
000, and there was a verdict for the plaintiffs.   The defences
made and the facts of the case appear in a report of the
trial found in 5 FED. REP. 238.   The charge of the court will
be found in that report, and, in addition to the exceptions
taken to it on the motion for a new trial, it was assigned for
error that the court refused the following requests for instruc-
tions to the jury, offered by the defendant company:

(1) That the reception of this draft for $325 by the defendant, on account
of premiums, imposed upon the drawer or the plaintiffs the duty of making
absolute provision for its payment at maturity at the place of payment;
and, if he or they failed to do so, the defendant was under no obligation to
present the same for payment.

(2) That the refusal of the drawees to accept the draft, when presented

for acceptance, relieved the defendant from its obligation, if any existed, to present the same for payment, in the absence of further notice that the same would be paid when due.

(3) That if the jury believed, from the evidence, either that the drawer had not placed any funds in the hands of the drawees to meet the draft at its maturity, or that it was in fact presented for payment at or after its maturity, the policy became void and of no effect before the death of the party whose life was insured thereby, and the plaintiffs are not entitled to recover.

The court refused to charge in accordance with either of said requests, and the defendant thereupon duly excepted.

*Henry W. Johnson* and *Edward L. Belcher*, for the motion.

*Humes & Poston* and *Lowrie W. Humes,* contra.

HAMMOND, D. J.    The most mature reflection has not convinced me that there was any error occurring on the trial of this case for which a new trial should be granted.   The defendant corporation, in order to avoid liability upon the policy, is compelled to assume that they had absolutely no duty whatever to perform in relation to the draft, and that what they did do towards presenting it was merely *ex gratia*.   It was conceded at the hearing that if the money had been in the hands of Greenwood & Co. to pay the draft on the fourteenth day of October, 1871, when it was due, the company would have been liable if it had failed to present it on that day, and the only question of fact which the company desired to try was whether or not Dr. Pendleton had thus placed funds in the hands of his merchants to pay the draft.   This concession seems to have been receded from in the printed brief submitted on this motion for a new trial, and it is now said:

"That the receipt of the draft imposed no obligation upon the company to do anything beyond presenting it for payment, at or after maturity, at the place designated therein, and we very much doubt whether we were bound to go as far as we did on the trial, and show a presentation in fact, for the production of the draft on the trial *prima facie* established its non-payment, and the burden of proof to show that it would have been paid on presentation rested on the plaintiff."

This seems to still concede a necessity for presentation at some time, and, in order to meet the exigencies of the proof, the occasion of presentation for acceptance is taken as a compliance with that duty; and, inasmuch as acceptance was re-

fused, it is said that, "on principle as well as authority, this refusal rendered a demand for payment on the day of maturity unnecessary;" for which *Plato* v. *Reynolds,* 27 N. Y. 586, is cited.

This statement of the law ignores entirely an essential factor in the rule invoked, and that is due notice of non-acceptance, which was given in the case cited, and must be always, to excuse non-presentation for payment, as the jury were told in this case. 1 Daniell, Neg. Inst. (2d Ed.) §§ 449, 598. But the notice not having been given in this case, the jury were properly told that a failure to give it rendered presentation for payment as necessary on the day when the draft fell due as if no presentation for acceptance had been made. Id. §§ 449, 454. Indeed, it is possible, although the holders of this draft, payable as it was three months after date, on a day certain, were not bound to present it for acceptance, that, having undertaken to do so, the failure to protest for non-acceptance itself discharged the drawer, and operated to make the payment of the premium complete by making the paper their own absolutely. Id. § 452; *Gracie* v. *Sanford,* 9 Ark. 233. There was scarcely any proof before the jury to justify them in saying that the relations between the drawer and the drawee were such as to make the drawing of this bill a fraud that would excuse the laches, which seems, under modern decisions, to be the only excuse. 1 Daniell, Neg. Inst. (2d Ed.) § 450; 2 Daniell, Neg. Inst. (2d Ed.) §§ 1075, 1076, 1077, 1078, 1079. But the charge was very favorable on this question to the defendant company, and it cannot complain that the rules of the commercial law were held too rigidly against them.

It was repeatedly said in the argument, as it is said in this brief, that no injury could result to the plaintiffs by a want of presensation and notice. I do not understand, from the foregoing authorities, that this is now the test by which we determine whether the failure to present and give notice has been excused; but, if it be so, this case manifestly falls within the cases of injury as pointed out by the adjudi-

cations cited by this learned author on the commercial law of negotiable instruments.    Moreover, there were special circumstances in this case which made the probability of injury much greater, and the laches more inexcusable.    In the first place, we all know that where relations like those between Dr. Pendleton and Greenwood & Co. exist, there would be much more prospect of acceptance where protest would result from refusal than where it is waived, as the agents of the company here assumed to do without Dr. Pendleton's authority. He had not waived protest, and they had no right to do it for him without discharging him from all liability to pay the draft, and thereby releasing the condition for a forfeiture which depended on that liability.    Again, on the facts of this case, there is good ground to say that there was that obligation on the part of Greenwood & Co. to accept and pay, that a failure to do so would render them liable for consequential damages, and require them to indemnify these plaintiffs against the forfeiture claimed in this case, if it should result from their refusal to accept or pay.    Sedgw. Dam. (6th Ed.) 84, in notes; 1 Daniell, Neg. Inst. (2d Ed.) § 564; Story, Bills, § 398; *Hadley* v. *Baxendale,* L. R. 9 Exch. 94; S. C. 26 E. L. & E. 398; *Prehn* v. *Royal Bank,* 5 Exch. 92; *Riggs* v. *Lindsay,* 7 Cranch, 500; *Russell* v. *Wiggin,* 2 Story, 214, 242.    And whether they would be so liable, where, by the laches of the holder, the drawer had been discharged, or where they could say in their own defence, if this draft had been presented on the day when due, we could and would have paid it, but, not being so presented, we are now unable, or, having parted with the drawer's funds, should not be required now to pay, may be doubtful.    Why the holder of a bill of exchange, who has by his negligence released the obligation to pay it, should be allowed to claim a forfeiture for non-payment, is not clear to me; but certainly, if the drawer has by that negligence lost his remedy for damages against the drawee, he should not be permitted to enforce the forfeiture.    Hence, there was a greater reason for acting promptly, under the law merchant, with this draft.

But aside from the obligations of the commercial law, the rules of which have been so much relied on by the defendant company to excuse their obvious laches, conceded to be sufficient to prevent recovery of this were a suit upon the draft itself, while repudiating them as to all responsibility for a compliance with the ordinary duties of a holder of such paper, there is that element of fair dealing in this case which would seem to require that the agents of this company should have substantially pursued the course indicated by the commercial law before claiming a forfeiture of this policy. I did not think the facts justified the court in submitting to the jury whether or not there had been a waiver, under the decisions on that subject, although Mr. Justice Bradley, in a case against this company, when there was involved one of the premium notes conditioned like this draft, indicates a principle that, possibly, justified the learned counsel for the plaintiffs in claiming a waiver. He says:

"Forfeitures are not favored in the law. They are often the means of great oppression and injustice. And, where adequate compensation can be made, the law in many cases, and equity in all cases, discharges the forfeiture upon such compensation being made. It is true, we held in *Statham's Case*, 93 U. S. 24, that in life insurance time of payment is material, and cannot be extended by the courts against the assent of the company. But where such assent is given the courts should be liberal in construing the transaction in favor of avoiding the forfeiture."

Again, after citing cases to sustain the above position, he says:

"These cases show the readiness with which courts seize hold of any circumstances that indicate an election or intent to waive a forfeiture." *Insurance Co.* v. *Norton*, 96 U. S. 234; *Insurance Co.* v. *Eggleston*, Id. 572; *Insurance Co.* v. *Wolff*, 95 U. S. 326.

It seemed to the court that it was here more a question whether the forfeiture had taken place, than whether it had been waived by the laches of the company; and that the most favorable view to be taken for the company was to give them the benefit of the commercial law to excuse the laches, is under it the facts would so excuse. But the view of the subject taken in the requests of the defendant company for instructions, and in the quotation from the brief already

made, is intolerable to my sense of justice, however it may appear to others, and the only doubt I have had about the correctness of the charge to the jury has been on the point whether the company was not bound to treat this draft at paid, so far as these plaintiffs were concerned, when they neglected to present it for payment on the day of its maturity. That they did not so present the draft hardly admits of a doubt on the proof, and the probability is that it was not presented because the bank at New Orleans took the same view of the law that has been urged here, namely, that refusal of acceptance excused presentment of payment, overlooking the further requirement of protest and notice to have this effect; induced thereto, no doubt, by the fact that they had been instructed not to protest, from which it might be reasonably inferred that there was no necessity for prompt action in the premises. The burden of proving the presentment was on the defendant, and that there was no such proof as the law requires is plain. 1 Daniell, Neg. Inst. § 598. There is as little doubt that if the presentment for payment had been made the draft would have been paid. The draft for the cash portion, which, by calculation, appears to have been just enough to cover the interest and agent's commissions, was paid, and, as precisely the same course had been pursued in reference to the first premium, it appears, by the account of Greenwood, that that draft was not presented promptly, nor for some days after it was due. This, taken with the proof here as to the mode of business adopted in reference to this draft, shows that the agents of the company were not so diligent or prompt in their dealings with this policy-holder as to justify them in requiring strict and prompt action on his part. Here was a man in the wilds of Arkansas, where communication was difficult at all times, some hundreds of miles away from this city, where the insurance agency was located, and many hundreds more away from the city where he did all his financial business and got the money to pay all his debts. His insurance was solicited at his house by a traveling agent, who, recognizing from the nature

of his business as a planter that he would not be in funds till his crops matured, took a long-time draft on this commercial house for the premium which was paid. Then, when the second premium was about to fall due, the process is repeated. Now, while it must be admitted that the commercial law did not require it, acting in a spirit of liberality and fairness, it does seem to me, that, looking at all the facts, if the company intended to rely upon the forfeiture with that strictness they now do, these agents should have forwarded the draft promptly—far more promptly than they did—for acceptance, with instructions to protest and give notice if not accepted, so that Pendleton would have timely warning to prepare for payment and save the immense forfeiture that impended over him. Failing this, the least they could do was to forward it promptly for payment, which they did; but, by the neglect of the New Orleans agent, it was not presented,—certainly not at maturity, and, as I believe from the circumstances, never at all. This is not a case, as Mr. Justice Woods said, in *Thompson* v. *Ins. Co.* 2 Woods, 547; S. C. 5 Bigelow, 8, where there is an attempt to collect the policy without paying the premium, but where there is an attempt to avoid payment of the policy by taking advantage of the literalism of the contract to defeat the ordinary effect of that negligence on the part of the company which would prevent them from recovering on this draft if this were an ordinary transaction. Why there should be any different result of this negligence when the consideration of the draft is a premium of life insurance is beyond my comprehension. It is true, there was a further security for payment in the condition for a forfeiture, but that security was described by, and depended upon, the terms of the contract; not only those contained in the language of the draft and the policy, if you please, but likewise those imported into the contract by the law merchant when this negotiable instrument was taken in payment of the premium.

The cases of *Pitt* v. *Berkshire*, 100 Mass. 500; *Roehner* v. *Ins. Co.* 63 N. Y. 160; *Thompson* v. *Ins. Co. supra; Baker* v.

*Ins. Co.* 43 N. Y. 283; *Robert* v. *Ins. Co.* 2 Disney, 106; S. C. 2 Big. 141; S. C. 1 Big. 634; and *Howell* v. *Ins. Co.* 44 N. Y. 276, with others that might be cited to same effect, have no application to a case like this, and for the plain reason that there is a very essential distinction between the undertaking of the maker of a negotiable promissory note with a condition like that found in this case, and that of a drawer of a bill of exchange. The one is an absolute and unconditional promise to pay, and if not otherwise expressed, as these cases properly hold, the duty of the maker is to hunt up the creditor and pay him wherever found, and no demand is necessary to complete the forfeiture. The other is only a conditional promise to pay, and is itself defeasible if the condition is not complied with by the holder of the paper. This conditional promise is nowhere better expressed than in one of the cases cited by the learned counsel for the defendant:

"The undertaking of the drawer is that in case the bill is presented for acceptance the drawee will accept, and that he will pay the bill upon due presentment for payment, whether it has been presented for acceptance or not; and if the drawee refuses to accept upon due presentment for such purpose, or refuses to pay in case payment is demanded at the maturity of the bill and notice of such refusal is given, then that the drawer will pay. His liability is conditional." *Plato* v. *Reynolds*, 27 N. Y. 586, 591; 1 Daniell, Neg. Inst. (2 Ed.) §§ 479, 571.

These distinctions were ignored by the agents of the company in this case, as they are now by counsel in argument, and therefore no attention was paid to them. The result, in contemplation of law, is that this premium was paid by that draft, or that, having failed to comply with these conditions, the holder of the draft has not put the policy-holder in default of payment. The contingency provided for in the forfeiture clause of the policy has not occurred. A draft was taken in payment, with a condition that the company would do certain things, as above described, or on failure to do these things all obligation to pay it should be discharged. Having by its negligence discharged the liablilty on the draft, it cannot now, as I have endeavored to show, repudiate the agreement and rely on the original consideration, either

for the purpose of collecting the premium or enforcing a forfeiture for non-payment.    1 Daniell, Neg. Inst. § 452. If the company could have shown anything to excuse this neglect, such as want of funds, or reasonable expectation of acceptance and payment, or other fraud, the charge given permitted such excuse; but on the facts the jury were clearly authorized to say none existed.

It is claimed that, because the policy contains a clause that "the omission to pay any premium,   *   *   or failure to pay at maturity any note, obligation, or indebtedness for premium or interest herein, shall then and thereafter cause this policy to be void, *without notice to any party or parties interested herein,*" by its very terms, protest and notice were waived upon this draft, or cannot be required to secure the forfeiture, however the failure to give it may operate to prevent a recovery on the draft itself.    What has already been said to show that the obligation to pay the draft has never been fixed, and therefore there has been no breach of the condition on which the forfeiture depends, is a sufficient answer to this argument.    If the company could not recover in a suit on the draft itself there is no reason why it should have any benefit for its non-payment.    But it is obvious that the clause was not intended to waive protest and notice on the draft, and that is not the character of notice referred to by it. It was intended to provide against the necessity to give notice that the company claimed and would insist on a forfeiture. The decisions are not uniform in determining whether the condition for prompt payment is a condition precedent or subsequent, and there may be a distinction, and probably is, on this point, as applied to the premium and a note given in payment of it.    Perhaps in our courts, under the influence of the cases already cited from the supreme court of the United States, it would be treated as a condition *subsequent,* though I am not sure the point is decided.    At all events, many cases hold that no forfeiture is incurred until notice by the company that it is claimed has been given; and all agree that the conduct of the company may be such as to waive the condi-

tion, unless that effect is destroyed by distinct reservation at the time that the conduct shall not so operate. *Ins. Co.* v. *French,* 4 Big. 369; S. C., on appeal, 30 Ohio, 247, is an example of 'these cases. See, also, *Ins. Co.* v. *Warner,* 80 Ill. 410; *Ins. Co.* v. *Anderson,* 77 Ill. 384; *Bouton* v. *Ins. Co.* 25 Conn. 542; *Jollife* v. *Ins. Co.* 39 Wise, 119; *Seamans* v. *Ins. Co.* 3 FED. REP. 325; *Young* v. *Ins. Co.* 4 Big. 5; S. C. 2 Sawy. 325, which was reversed on appeal, because the supreme court took a different view of the facts. *Ins. Co.* v. *Young,* 23 Wall. 85. These cases were relied on by the plaintiffs to show that the company not having claimed a forfeiture, by giving notice of it, none had occurred; or, at least, it had been, on the facts of this case, waived. It is plain, however, that the clause under consideration protects this policy from the principle of these cases so far as they relate to a requirement of notice, and that it is self-forfeiting without such notice. The language of the clause itself makes it clear that it does not refer to notice required by the commercial law to parties to the draft, but notice to "any party or parties interested *herein*"—that is, in the *policy;* and it means that the forfeiture shall enure without notice to the plaintiffs, and I so charged the jury.

It would be interesting, perhaps, to follow up the effect of the holding of the court in this case in its application to other situations of the parties not shown by the proof; as, for example, if the draft had been negotiated by the company and the holder had neglected to present, or if it had been accepted and the acceptors had failed to pay. But it is not necessary to test the soundness of the charge by such means. It will be found on thoughtful consideration, I think, to be consistent with any situation that is possible, to hold that this company came, as to this draft, under all the obligations of any other holder of such paper; and the minor points suggested in the argument I need not consider.

One of the learned counsel makes a plausible and forcible argument against the charge by insisting that the draft was not negotiable under the law merchant. He urged that the

draft was not payable absolutely, and the drawer had an option to discontinue the policy by refusing payment. Perhaps the drawer of this draft had no option to discontinue the policy by refusing to pay the premium itself. He was not in terms bound to pay it. It was the contract of his children, and, while he may have refused to keep it up for them, they could by other means have continued it. The option was theirs, not his. But certainly, in his capacity as drawer of this draft, he had no option about it. If the necessary steps to charge him had been taken he would have been liable and the company had the option to collect it, or, on non-payment, surrender it and rely on the condition for forfeiture. If it had been accepted, or otherwise secured, as by a mortgage, the company, having fixed the liability of the parties, may have chosen to waive the forfeiture and collect the draft; and, as to all the parties to it, the promise was unconditional. That it was negotiable is established by authority. *Jarman* v. *Ins. Co.* 3 Cent. Law. J. 303; S. C. 22 Int. Rev. Rec. 162; *Kirk* v. *Ins. Co.* 39 Wis. 138; *Williams* v. *Ins. Co.* 19 Mich. 451; *Wall* v. *Ins. Co.* 36 N. Y. 157; *Roehner* v. *Ins. Co. supra*, at page 165 of 63 N. Y.; 1 Daniell, Neg. Inst. (2d Ed.) § 52; Id. §§ 35–44; *Bank of Sherman* v. *Apperson*, 4 Fed. Rep. 25.

*The Jarman Case, supra*, by the very able judge of the eastern district of Michigan, sitting in this court, is, on principle, conclusive in favor of the charge given by the court in this case, and so are the others cited; because, if this draft, or the note in that case, be negotiable, so that it would be entitled to grace, (if it had not been waived,) there is no reason why it is not subject to all the other incidents and rules of the commercial law, as the court held it to be. On the whole, I am satisfied the case was correctly tried, and that the verdict is right.

Motion overruled.