### Henry Turner v. Phœnix Insurance Company of Hartford. ·

*Malicious prosecution—Power of agent—Order of proof—Cross-examination.*

1. A general agent of an insurance company for a district embracing several states has such authority in any one of them, though his office be in another, as will make the company liable for a malicious prosecution instituted in the company's name by his connivance in either state.

2. The finding of a jury will be set aside if there is no evidence to support it.

3. Whether ratification may be implied by the act of an agent when the principal himself could not lawfully have done the original act, and its consequences are beyond the control of both—Q.

4. Evidence of an agent's acts should not ordinarily be admitted before his authority is shown, though it is discretionary with the court to .

permit it where authority is to be shown by circumstances. But it cannot be done in the case of sub-agents.

5. In an action against a company it is error to say of its agent that he is part of the company.

6. Where in an action against a principal the letter of an agent is put in evidence to show ratification, it is error to exclude on cross-examination a subsequent letter which would rebut the inferences to be drawn from the first.

7. A jury cannot be required to report the testimony on which they have found.

8. In an action against a principal for malicious prosecution its agent was examined for the plaintiff and was asked if he had received a letter and telegram from his superior to go to a certain place and look after defendant's claim. *Held*, error to exclude on cross-examination the question whether the telegram directed him to go and be a witness in the proceeding against the plaintiff.

Error to Saginaw. (Gage, J.)   Oct. 14.—Nov. 19.

CASE. Defendant brings error. Reversed.

*Wisner & Draper* for appellant. A corporation cannot be held liable for a wrong committed by one of its officers if he was not expressly authorized to do it, or if it was not adopted or ratified: Ang. & Am. Corp. § 311; *Poulton v. Lond. & S. W. Ry.* L. R. 2 Q. B. 534; *Edwards v. Lond. & N. W. R. R.* L. R. 5 C. P. 443; *Rowe v. Lond. Pianoforte Co.* 13 Cox Cr. Cas. 211: 14 Eng. 648; *Vanderbilt v. Rich. Turnpike Co.* 2 N. Y. 479; *Mali v. Lord* 39 N. Y. 381; *Carter v. Howe Mach. Co.* 51 Md. 290; *Pressley v. Mobile R. R.* 15 Fed. Rep. 199; *Bank of New South Wales v. Ouston* 20 Alb. L. J. 32; *Eastern R. R. v. Richardson* 6 Exch. 314; *Roe v. B. L. & C. J. R. R.* 7 Exch. 36.

*Albert Trask* and *Hanchett & Stark* for appellee. A master is responsible for acts of his servant done in the course of his employment: *Levi v. Brooks* 121 Mass. 501; *T. W. & W. R. R. Co. v. Harmon* 47 Ill. 298; *Rounds v. D. L. & W. R. R.* 64 N. Y. 129; *Heenrich v. Pullman Car Co.* 20 Fed. Rep. 100; *Redding v. S. C. R. R. Co.* 16 Am. Rep. 581; *Ramsden v. B. & A. R. R. Co.* 104 Mass. 117; *Howe v. Newmarch* 12 Allen 49; *N. W. R. R. Co. v. Hack* 66 Ill. 238; *Record v. Cent. Pac. R. R. Co.* 12 Oreg. 176; *Mott v. Consumers Ice Co.* 73 N. Y. 543; the acts of an attorney

are ratified in advance: *Foster v. Wiley* 27 Mich. 249; *Chicago & N. W. Ry. Co. v. Bayfield* 37 Mich. 212; *Kreiter v. Nichols* 28 Mich. 496; *Smith v. Webster* 23 Mich. 298; *Fairbanks v. Stanley* 18 Me. 296; *Casebeer v. Drahoble* 13 Neb. 465; Cooley on Torts 538; 2 Greenl. Ev. § 449; as to ratification: *Park v. Tol. C. S. & Det. Ry.* 41 Mich. 352; *Goff v. G. N. R. R.* 3 El. & El. 672; *Bass v. Chic. & N. W. Ry.* 42 Wis. 654.

SHERWOOD, J.   This suit was brought to recover damages against the defendant for malicious prosecution.   The plaintiff had been acting as agent of the defendant at East Saginaw, and in that capacity had collected some premiums which he refused to pay over when demanded by a special agent, the plaintiff claiming at the time the money was not due when demanded.   Thereupon the plaintiff was complained of by a local agent named McClintock, residing at East Saginaw, and arrested for embezzlement.   A hearing in the case was had before a magistrate and the plaintiff was discharged.   He now brings his suit alleging that the arrest was authorized by defendant, and was unlawful, malicious and without probable cause.   The defendant's plea was the general issue.   The plaintiff obtained a verdict at the circuit for $3070 and the defendant brings error.

The record contains the substance of all the evidence given upon the trial.   Fifteen exceptions were taken to the rulings of the court in receiving or rejecting the testimony offered, one to the refusal of the court to give instructions to the jury, and one to the charge as given.

The evidence disclosed that the defendant company was located at Hartford, Connecticut; that H. M. Magill was the general agent of the defendant in Michigan and for the Western and Southern states, and had his office at Cincinnati; that he had the general charge of all the agencies and business of the company in Michigan in 1877 and 1878; that T. F. Spear was assistant general agent and also resided at Cincinnati; that H. H. Heaford, whose residence was at Jackson, was a special agent for the State of Michigan; that all agents were authorized to make collections and remittances for the

company, and any agent might employ an attorney when specially authorized so to do by the general agent or Mr. Spear.

It further appears by the record that the plaintiff Turner and said McClintock had been in business together at East Saginaw, and some time previous to the prosecution complained of their business relations had been dissolved, McClintock continuing to act as the local agent for the company at that city.

It further appears that there still remained due from the plaintiff to the company on the 11th day of January, 1878, a balance of about $50, and judgment was obtained a short time thereafter against the plaintiff and McClintock for such balance, and it was because of the non-payment of this balance when demanded that the criminal prosecution complained of was instituted.

The local agent, McClintock, made the complaint upon which the warrant was issued, and the case was prosecuted at his request in behalf of the people by Michael Brennan, a lawyer who had his office with Wisner & Draper and who had formerly been their law student and at that time occasionally received claims from their office to collect. The claim against the plaintiff had been sent to Wisner & Draper for collection by the company and they had turned it over to Brennan for that purpose. It further appears that Brennan in his correspondence with the plaintiff, in his efforts to collect, had signed the name of Wisner & Draper to his letters in which a criminal prosecution is alluded to, if not threatened.

The plaintiff claims that the defendant authorized the criminal prosecution against him, and seeks to hold it responsible for the acts of its local agents and attorneys at Saginaw, who he insists advised and took part in the criminal prosecution; and further claims that if the defendant did not authorize commencement of the prosecution, it subsequently ratified what the local agents did, and the defendant is therefore liable for the alleged illegal act. It is not claimed by the plaintiff that the criminal prosecution was authorized,

aided or abetted, or even ratified, by the general office of the company, but by its general and special agents at Cincinnati, and by Heaford, its special agent in this State. Magill, Spear and Heaford all testified in the case, and all testified the prosecution was never authorized by them, or either of them, but on the contrary they were all opposed to it and that neither of them ever sanctioned, approved or ratified any act of the local agents or attorney, if any had been done for that purpose, and that none of their local agents had any general or special authority given them for such purpose.

It is further claimed by defendant that not only was no such authority given to their attorneys Messrs. Wisner & Draper by the company, but that said attorneys never exercised such authority, and neither consented to nor approved of the prosecution complained of.

After the testimony in the case was closed, the circuit judge, on request of defendant's counsel, submitted to the jury five requests for specific findings, which requests and findings appear in the record as follows:

" 1st. Was plaintiff prosecuted criminally by any agent of defendant?  *Answer*.  Yes.

2nd. If you say yes to above, name the agent.  *A*.  Wisner & Draper, Heaford and Magill.

3rd. If you say yes to No. 1, state who, if any one, acting for defendant, authorized or directed the prosecution.  *A*. Wisner & Draper, Heaford and Magill.

4th. Was the act of the person commencing the prosecution subsequently adopted or ratified by defendant's agents ? *A*. Yes.

5th. If you say yes to 4th, state what agent so ratified or adopted it.  *A*.  Heaford and Magill."

It will be noticed that the jury found by their verdict that both Heaford and Magill not only prosecuted the criminal suit, but that the acts of McClintock and Brennan in commencing it, were subsequently adopted and ratified by them.

These findings present three questions for our consideration, either of which decided in favor of defendant will render a new trial necessary:  *First*. Could Magill and Heaford or either of them bind the defendant, so as to make it liable

for the unlawful criminal prosecution of the plaintiff under the general authority of the one and the special authority of the other given by the company? *Second.* Was there any evidence in the case tending to show that Magill prosecuted, or authorized or approved of the prosecution, of the plaintiff, criminally? *Third.* Was any part of the evidence tending to prove these facts improperly admitted by the circuit judge?

We think the first question must be answered in the affirmative. The company had a legal existence in this State and was authorized to do business therein. It could only act through officers or agents. It had no general office here, and was therefore obliged, in transacting its business, to act through agents. There is no question but that Magill was empowered to act as such in this State. He was its general agent, and unless the contrary appears, must be held, within the territorial limits of his agency, invested with all the powers necessary or proper in conducting the business of a general officer of the company. Any other construction would be attended with great inconvenience and many times work injustice to those with whom the defendant had dealings. It would be intolerable indeed to hold that the defendant through its general agents could do an extensive and lucrative business with the citizens of our State, within its borders, and still not be amenable to its laws for the wrongs and injuries it may have done to our people in prosecuting such business.

We have no doubt that Magill or his assistant Spear, under their general authority, might so far aid and abet a malicious prosecution in behalf of the company as to make the defendant liable in an action by the injured party therefor. Did Magill do so in this case?

The answer to this inquiry brings us to the consideration of the second question presented. We have looked carefully for the evidence that he or Spear knew of the commencement of this criminal suit, or of the intention to commence it, before it was instituted, or that Magill ever aided, abetted or in any manner approved of its prosecution after it was

commenced, and have been unable to find it. Neither do we find any *tending to show* such facts, but on the contrary his testimony is to the effect that the criminal proceedings were commenced without his knowledge or consent, and the prosecution was never in any manner approved or countenanced by him. We think the finding of the jury upon this subject must be held erroneous, and that the record fails to furnish any evidence tending to support it.

Implied ratification is principally relied on in this case. Whether or not ratification can be implied by the acts of the agent when the act complained of could not have been lawfully done by the principal, and the consequences of which were legally beyond the control of both, is a question which we do not feel called upon to consider. With propriety we might close our discussion of the case here; but inasmuch as a new trial is to be had, we deem it our duty to consider a few exceptions under the third question stated.

The 1st, 2d and 3d assignments of error relate to the rulings of the court upon admitting testimony of those acting as agents of defendant before establishing their authority so to do. This practice is frequently indulged in at the circuit; and while it relates to the order rather than to the competency of the proofs and is therefore discretionary with the trial court, the practice is not to be encouraged and should not be allowed unless special reasons exist therefor. We are not, however, prepared to say the course pursued in this case upon the trial was improper. It was proposed by plaintiff's counsel to show the authority of the agent by circumstances, and as well by the actions as by the sayings of the principal, and in such cases the discretion of the circuit judge may be properly exercised when in good faith it shall be invoked. *Campbell v. Sherman* 49 Mich. 534.

It appears from the testimony that the criminal proceedings were commenced under the immediate advice of Brennan. It was not claimed that Brennan derived his authority from any officer or general agent of the company, but from Wisner & Draper, who were the company's attorneys in the civil suit. The plaintiff was permitted to show, against the

objection of defendant's counsel, what Brennan said and did, and that he wrote the plaintiff letters in the name of Wisner & Draper before making any proof of authority from them. This, we think, was carrying the discretion too far. As we have said, under special circumstances the acts of the agent and his sayings and doings, may be shown before the particular agency sought to be established is proved. But it is going beyond the reason for or necessity of the rule to extend it to sub-agents. The testimony of Brennan and the letter marked 7, written by him, should not have been admitted until his authority had been shown. The objection of defendant's counsel was well taken.

The court permitted two letters, written to Magill by Heaford, to be read in evidence against the objection of defendant's counsel—to the first that it was irrelevant and immaterial; to the second that it was written after the criminal prosecution had terminated—and the court, in connection with its ruling upon the objection, stated: "I think it is competent. This man [meaning Heaford] is a part of the insurance company." This was clearly error. The court stated, as a fact, more even than the plaintiff asked the jury to find. The plaintiff only asked the jury to find that Heaford was an agent, but the court relieved them entirely upon that point by saying he was a part of the company itself. This could not have failed to give the jury wrong impressions of what was necessary to be shown in order to make Heaford's statements competent evidence in the case. It was substantially saying to the jury that whatever Heaford said or did was authorized.

One of the letters above alluded to was put in evidence on the direct examination of a witness for the plaintiff as tending to show ratification by Magill of the act complained of, and upon the cross-examination the defendant sought to put before the jury a reply to the letter by Magill, in which he clearly states that the defendant disclaimed all connection whatever with the criminal proceedings, and further says the suit was without the defendant's instruction or consent. The letter put in evidence by the plaintiff was written the 12th

of March, and the reply thereto the 13th. The court refused
to let the reply go to the jury. This was error. If the first
was admissible, certainly common fairness required that the
other should have been received. The latter rebutted the
inferences sought to be drawn from the first.

No error was committed by the court in refusing to sub-
mit to the jury the special request to find, contained in the
15th assignment of error. The request does not call for a
finding of any particular fact, but presuming the jury will do
so, asks them to make report to the court of the testimony
upon which they reached their conclusions. Such a request
is improper under the statute.

On the direct examination of Mr. Heaford by plaintiff, the
witness testified he received a letter and telegram from
Magill to go to East Saginaw and look after defendant's
claim, which he regarded as instructions. On cross-examina-
tion, counsel for defendant asked the following question:
"Did that telegram direct you to come to East Saginaw and
be a witness in the criminal case against Mr. Turner?" This
was objected to as leading, and the objection sustained.
This was error. The question was within the rule of cross-
examination, and the witness should have been allowed
to answer.

It is unnecessary to consider the exceptions further. The
charge having been based upon testimony improperly
received, could hardly fail to be erroneous.

The judgment must be reversed and a new trial granted.

The other Justices concurred.