BEHLING, Respondent, vs. NORTHWESTERN NATIONAL LIFE
INSURANCE COMPANY, Appellant.

*February 5—February 24, 1903.*

(1) *Contracts: Construction: Forfeitures.* (2–5) *Life insurance:
Failure to pay note: Self-executing forfeiture clause: Vested
interest of beneficiary.*

1. In construing a contract the court cannot, in order to prevent a
forfeiture, go farther than a fair construction of the language
used will permit.

2. A life insurance policy provided that "failure to pay any pre-
mium or note or interest when due" should terminate the con-
tract and forfeit all payments to the company. It did not pro-
vide for the giving of premium notes, but for cash payments
only. *Held*, that the word "note" did not refer only to pre-
mium notes, but meant any note given to the company either
as evidence of indebtedness for the insurance or as payment
therefor.

3. An application for change of an insurance contract stated that,
in consideration of the waiver of cash payment of the amount
the assured was required to contribute to the reserve, he
acknowledged a lien for that amount against the policy, "ten
per cent. of said sum being paid with this application, and the
residue, or so much thereof as shall be unpaid at my decease,
with any unpaid interest, to be deducted from said policy upon
its maturity." Ten per cent. of said sum was not paid in cash
as recited, but the assured gave his note therefor. The policy
provided that "failure to pay any premium or note or interest
when due will thereupon terminate this contract and insur-
ance." *Held*, that failure to pay the note given as stated
terminated the contract.

4. Where a note given upon an insurance policy is payable at a
particular place and the contract provides that failure to pay
the note according to its terms shall forfeit the policy, it is
sufficient to make the forfeiture clause operative that the note
be at the place designated at the proper time so that the as-
sured may pay it, and that he fail to do so. No demand or
notice or declaration of forfeiture is necessary.

5. The interest of a married woman as beneficiary under a policy
of life insurance is subject to the provisions of the contract in
respect to forfeiture by acts of the assured.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Reversed.*

Action to recover on a life insurance policy issued in lieu of one previously held by plaintiff's husband, which was upon an assessment plan requiring payment of an assessment of not exceeding $1.10 in definite periods and securing an indefinite amount of indemnity. The plan was changed in accordance with ch. 270, Laws of 1899, policy holders being permitted to surrender their contracts and obtain in lieu thereof others with a stipulated premium feature, so called, and securing to them fixed amounts of indemnity. The change required an application from the assured containing certain stipulations as a part of the new contract. Plaintiff's husband made such application. It contained this language:

"In consideration of the granting of this request and the waiver by the company of the payment by me in cash of the reserve value at my attained age, . . . I do hereby acknowledge the existence of a lien against said policy in the sum of $79.06, with interest at four per cent. per annum, interest payable semi-annually from the first day of December, A. D. 1900, at the office of the company in the city of Madison, Wisconsin, and which said sum, with interest at four per cent. per annum, shall be a lien against and charge upon said policy until paid and discharged, ten per cent. of said sum being paid with this application and the residue, or so much thereof as shall be unpaid at my decease, with any unpaid interest, to be deducted from said policy upon its maturity by my death."

The application was accepted. Instead of a cash payment of one tenth of the lien claim, or $7.91, being demanded and paid as recited in the application, the defendant accepted the assured's note therefor, payable on the 1st day of January, 1901, at the home office of the company at Madison, Wisconsin, with interest on the same at the rate of four per cent. per annum. It was not paid when due. No demand for payment thereof was made. It was retained by the com-

pany without any communication in respect to it or the effect of the default passing between it and the deceased till his death, which occurred January 22, 1901. The policy contained this provision:

"Failure to pay any premium or note or interest when due will thereupon terminate this contract and insurance and forfeit all payments made to the company."

The plan upon which the policy was issued required cash payments. There was no reference therein to any premium or other note, nor to the subject of notes, except that quoted. The court construed the contract and acts of the parties as waiving payment of the $79.06 till the maturity of the policy, and held the giving of the note a transaction entirely independent of such contract, hence not within the forfeiture clause thereof. The defense was based wholly upon the forfeiture clause and the default upon the note. The court held that plaintiff was entitled to recover the amount of the policy less the $79.06 and interest, made a lien thereon by the terms of the application. Judgment was rendered accordingly.

For the appellant there was a brief by *Phillips & Hicks,* and oral argument by *E. R. Hicks.*

For the respondent there was a brief by *Pierce & Lehr,* and oral argument by *J. E. Lehr.*

MARSHALL, J. We apprehend that the court reached the conclusion that the forfeiture clause of the contract of insurance did not include the note by applying the familiar rule of construction, often stated so broadly as to be liable to mislead, that the language of a contract will not be so interpreted as to result in a forfeiture if a different meaning can fairly be attributed to it, and that those parts of a contract embodied therein for the benefit of one party, so expressed as to be ambiguous, should be construed favorably to the other party. Those rules are sometimes supposed to permit a court to violate the contractual intent common to the parties at the

time of making the contract by saying that they intended one
thing when the reasonable probabilities are that they intended
something else, and to take that course because the intent ju-
dicially found is within the reasonable scope of the language,
looking to that alone. Rightly understood, rules for con-
struction do not go to any such length. Otherwise it would
be a common occurrence for a court to judicially substitute
for parties a contract very different from the one they made
for themselves, merely to avoid unfortunate consequences to
one of them. When it is said that forfeitures are not favored
and will not be enforced if they depend upon judicial con-
struction, if a meaning can be found within the scope of the
language involved which will justify avoiding it, the meaning
intended by the proviso is: if a meaning can be so found
reasonably,—found in accordance with settled law for the de-
termination of contractual intention from the language used
by the parties. The office of rules for construction is not
merely to enable courts to say how the language of a contract
shall be read, but to enable them to say how the parties con-
cerned intended that it should be read. In applying such
rules the court is bound to look, not to every meaning which
can reasonably be attributed to the language used, as a mere
abstract matter, but to such meanings as can be attributed
thereto consistent with the entire instrument and the situa-
tion of the parties at the time it was made. In a case of
reasonable doubt as to which of two meanings is the one the
parties had in mind when making their contract, the court
will prefer that which will prevent rather than that which
will lead to a forfeiture. And that is the extent to which the
court can go even where the meaning of a contract depends
upon judicial construction. True, as stated in the authori-
ties, it is only where no other construction is permissible
that the court will adopt one which will result in a forfeiture
(*Schunck v. Gegenseitiger W. & W. Fond*, 44 Wis. 369; *Dar-
row v. Family Fund Soc.* 116 N. Y. 537, 22 N. E. 1093);

but it is not permissible to do so arbitrarily—do it by merely ascertaining a meaning which by itself can, without the violation of rules of language, be attributed to the words of the parties. We cannot look for a contractual meaning of words beyond the reasonable boundaries thereof. Such boundaries are to be determined not alone by the particular words, but by such words and their context,—by the manner of their use as well as by the words themselves. If it appears clearly that they were used in one sense, a different sense cannot be adopted merely to prevent hardship. In short, the extreme length of judicial power to prevent a forfeiture is to go as far as "perfectly fair and entirely rational construction of the language actually used by the parties will permit. To do more than that would be to sacrifice to the apparent right of one party in one case that steadfast adherence to law and principle which constitutes the only protection and defense of all rights and all parties." 2 Parsons, Cont. (8th ed.) 506; *McQuillan v. Mutual R. F. L. Asso.* 112 Wis. 665, 677, 87 N. W. 1069, 88 N. W. 925.

Enough has been said to indicate the correct standard by which to test the accuracy of the construction which the learned circuit judge gave to the contract before us. The language of the forfeiture clause is general. It says: "Failure to pay any premium or note or interest when due will thereupon terminate this contract and insurance and forfeit all payments made to the company." We assume that the court held that the words "premium or note" were used to convey the idea of premium or premium note, and consequently held that the note in question was not within the forfeiture clause because it was not a premium note; that such a note is one which merely suspends the payment of the premium till the due date of the note; that one taken as a payment of a premium, strictly so called, is not a premium note, but is in effect mere evidence of a loan of money by the company to the assured, the money being used by him to satisfy

the premium liability. It may be that, technically, such is the case; but the question here is, as we have before seen, In what sense was the term used in the insurance contract? We search the application for the policy, and the policy, every part of the insurance contract, in vain for anything indicating that the giving of premium notes, in the sense of commercial paper suspending the due date of premiums, was contemplated by the parties. Cash payments only were provided for. Therefore to hold that the word "note" should be deemed to refer only to notes temporarily suspending or fixing the due date of premiums, would be to act arbitrarily. In our judgment, looking to the whole contract, we cannot come to any other reasonable conclusion than that the forfeiture clause, in its plain, ordinary signification, means that nonpayment of any note given to the company, either as evidence of indebtedness for the insurance or as payment therefor, shall *per se* extinguish all liability of the company upon the policy.

But it is said that payment of the entire amount the assured was required to contribute to the company's reserve fund, the $79.06 mentioned in the application, was postponed by the terms of the insurance contract till the maturity thereof and made a lien thereon. That is what the court decided. We cannot agree with that conclusion. It seems to violate the plain letter of the contract. The application for the insurance recited as a fact the payment to the company at the time it was presented of ten per cent. of the $79.06. The whole amount of the reserve fund to be contributed to the assured was not postponed till the maturity of his contract, but, using the language of his application, which of course forms a part of his contract, "the residue, or so much thereof as shall be unpaid at my decease, with any unpaid interest," etc., was postponed,—the residue left after payment of the ten per cent. which the application recited was paid at the time it was presented to the company. Upon the theory of

the decision complained of, the appellant voluntarily, without consideration, released its security upon the policy for the ten per cent. by an independent transaction by which it in effect loaned the assured money to make the cash payment required upon the policy. Obviously, if, as the court found, the giving of the note was a full cash payment to the company, extinguishing instead of suspending payment of the reserve fund premium to that amount, then to that extent it released the lien upon the policy. *McCoy v. Quick,* 30 Wis. 521.

It is considered that payment of nine tenths, only, of the reserve fund was by the terms of the insurance contract postponed till the maturity thereof, and that the note for $7.91 was taken for the other tenth and made payable January 1, 1901. It follows that the note is within the forfeiture clause of the policy and that by the nonpayment thereof the policy lapsed, if we are to give effect to the plain language thereof. It was self-executing in form, therefore immediately upon the happening of the event which by the stipulation was of itself to have the effect of terminating the policy contract, it was terminated. The effect of a self-executing forfeiture clause has been so often discussed by this and other courts that we need only at this time, it seems, suggest the rule.

It is said that, conceding that the note is within the forfeiture clause of the policy, the failure of the appellant to make any demand for payment thereof or to suggest in any way to the assured that a forfeiture would be insisted upon, or to do any affirmative act declaring the forfeiture, waived the same. The law, without much conflict in the authorities, is settled the other way. Where a note given upon a policy of insurance is made payable at a particular place and it is stipulated in the contract that failure to pay the same according to its terms shall terminate the policy, it is sufficient to make the forfeiture clause operative to have the note at the place designated for payment at the proper time, so as to enable the assured to pay it if he desires to do so, and his failure to

make such payment. The policy being at an end by the happening of these events, the company owes no duty to the assured to give him any notice to that effect. In 2 Joyce, Ins. § 1208, after reviewing the authorities at considerable length, the author fairly sums up the question thus:

"Unless there is something in the particular circumstances of a case to warrant a departure therefrom, or unless a statute provides otherwise, the rule evidenced by the undoubted weight of authority is, that the contract ceases in such case upon default according to and in the manner provided by the stipulations, and that no demand or notice or declaration of forfeiture is necessary."

The more significant of the cases usually cited to support a view contrary to the one last expressed, will be found upon examination not to do so, or it will be discovered that the courts overlooked the difference between the duty of a holder of a paper which does not evidence an absolute promise to pay or make it the duty of the debtor to pay at a stipulated place, and a note like the one in question in this case. That was clearly pointed out in *Pendleton v. Knickerbocker L. Ins. Co.* (C. C.) 7 Fed. 173. *Roehner v. Knickerbocker L. Ins. Co.* 63 N. Y. 160, is a leading case on the subject. The note there was made payable as in this case at a particular place, and at the due date thereof it was there for payment. It was not paid. Nevertheless the claim was made that the forfeiture clause was not rendered operative, because it was necessary for the company to have made known to the assured its intention to claim the benefit of the forfeiture within a reasonable length of time. The court decided that the forfeiture clause was self-executing and that immediately upon the happening of the events stipulated to be sufficient to terminate the insurance contract, it ceased to exist; that the company was under no obligation, as a condition of enjoying the benefit of the stipulation favorable to it, to do more than the parties concerned in the matter agreed should be done, and it did not require the company to make any demand of payment of

the note upon the assured or to declare any forfeiture for the nonpayment thereof. That is in accord with the current of authority that a provision in an insurance policy plainly intended, when satisfied, to terminate the insurance contract, must be given that effect by the courts. The rule which sometimes leads courts astray, that a contract will not be so construed as to create a forfeiture when any other result is permissible, must always give way to these other rules, to which there is no exception: When the language of a contract is plain and the apparent meaning leads to no absurd result, there is no occasion for and no right to resort to rules for judicial construction to discover some other meaning, and that is so regardless of consequences. Courts cannot change contracts for the purpose of saving a person from the consequences of his own want of judgment or the unexpected and unfortunate results of want of reasonable attention to his own interests at the time of making the contract. The best that courts can do is to enforce the lawful contracts of parties just as they have seen fit to make them. Applying that, this court and other courts hold that when the parties to a contract include in it a self-executing forfeiture clause it must be recognized and enforced, and that insurance contracts are no exception to such rule. *Joliffe v. Madison Mut. Ins. Co.* 39 Wis. 111; *Freckmann v. Supreme Council R. A.* 96 Wis. 133, 70 N. W. 1113; *Hughes v. Wis. O. F. M. L. Ins. Co.* 98 Wis. 292, 73 N. W. 1015; *Loeffler v. M. W. A.* 100 Wis. 79, 94, 75 N. W. 1012; *Schmidt v. Knights of Maccabees,* 97 Wis. 528, 73 N. W. 22; *Ellerbe v. Faust,* 119 Mo. 653, 25 S. W. 390; *St. Patrick's M. B. Soc. v. McVey,* 92 Pa. St. 510; *Holly v. Metropolitan L. Ins. Co.* 105 N. Y. 437, 11 N. E. 507; *Pitt v. Berkshire L. Ins. Co.* 100 Mass. 500; *Lyon v. Supreme Assembly R. S. G. F.* 153 Mass. 83, 26 N. E. 236; *Muhleman v. National Ins. Co.* 6 W. Va. 508.

The further point is made that plaintiff had a vested interest in the policy which cannot properly be prejudiced without

her consent by any act of her husband. The rule invoked has
no application to acts of the assured causing a forfeiture of
his policy according to the stipulations thereof. That was
recently suggested in *Ellison v. Straw,* 116 Wis. 207, 92 N.
W. 1094. The question was only passingly referred to be-
cause it did not seem to be one open to serious controversy.
Of course, whatever interest a married woman has as bene-
ficiary under a policy of insurance is subject to the provis-
ions of the insurance contract as regards forfeitures.

*By the Court.*—The judgment of the circuit court is re-
versed, and the cause remanded with directions to render
judgment dismissing the complaint with costs.