PHILLIPS and another, Respondents, vs. FRATERNAL RESERVE ASSOCIATION, Appellant.

*February 11—March 9, 1920.*

*Insurance: Fraternal associations: Benefit contracts: Default in payment of assessments: By-laws: Self-executing forfeiture clause: Reinstatement: Modification of contract by continued practice: Estoppel.*

1. A by-law of a fraternal order providing that upon the failure of a member to pay the assessments his benefit contract shall become void without notice, being a self-executing forfeiture provision, will be sustained.
2. Where a member frequently became delinquent in paying monthly assessments, and each time, with a single exception, his default was relieved within the time and in the manner prescribed by the by-laws, such reinstatements as provided by the contract did not operate to modify it or to estop the association from asserting rights under a self-executing provision in the by-laws for forfeiture in event of delinquency, and, the member having died while delinquent, there can be no recovery on the ground of modification of the contract or of estoppel.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

Life insurance. In 1903 the defendant issued a certificate of insurance upon the life of M. C. Phillips, then residing in Oshkosh, but who removed to Chicago in 1913. The insured paid all the assessments due except assessment 145, due July 1, 1916. The defendant's by-laws provide:

"The monthly assessment stated in each certificate assessed to and to be paid monthly by every benefit member

shall be paid without notice during, and applied to, said calendar month not later than 10 o'clock p. m. of the last day of each calendar month."

In this case the time for payment expired July 31, 1916, at 10 o'clock p. m.    At 10:45 p. m. July 31, 1916, the insured suffered a stroke of apoplexy, from which he died at 12:45 a. m. August 2, 1916.  He was apparently in ·excellent health and engaged in his usual business down to the moment he was stricken.    The by-laws of the defendant provide:

"Any member failing to pay his assessments or dues according to the provisions of the general laws of the *Association,* shall be *ipso facto* suspended from the order, except as otherwise provided herein, and his benefit contract shall thereupon become null and void, by operation of these by-laws, without notice."

On October 25, 1916, the amount of the delinquent assessment was tendered to the defendant.

On the part of the plaintiffs, the beneficiaries under the certificate, it was claimed that the defendant company, by a long course of dealing, had led the insured to believe that a strict compliance with its rules would not be required, and that after the death of the insured the defendant could not declare a forfeiture because of such strict compliance; and it was further claimed that such conduct constituted an estoppel or waiver, and amounted to a modification of the original contract by acquiescence.    Upon this branch of the case the court found:

"For years it was the universal custom of the supreme council, upon receipt of these monthly reports [referring to reports made by secretaries of local organizations], to write those shown in arrears or as suspended, calling attention to the delinquency and urging payment and reinstatement. This was followed by other urgent letters and all efforts made to keep members in good standing.    The secretary of the local council of which the deceased was a member accepted overdue payments and good-health cards if received

at any time before his monthly report was sent to the supreme council, and such member, instead of being reported suspended, was reported in good standing. In the Oshkosh local [of which the insured was a member] the suspension and reinstatements ran about fifteen per month. That was the rule likewise with most of the local councils. Although required by the by-laws, it was not until three or four years, more or less, before Mr. Phillips' death that the good-health card was required upon reinstatement, but latterly during that time it was insisted on when reinstatement was made during the sixty-day period."

"Deceased was almost constantly in arrears. Up to January, 1916, the local secretary carried Phillips as paid and seldom reported him suspended and reinstated. Phillips lived in Chicago after October, 1913, and frequently wrote from there and elsewhere for his indebtedness, and when advised would pay. January 1, 1916, a new local secretary took charge and had the same experience with deceased. Phillips did not pay his assessment and dues for the months of March, April, May, or June, 1916, when due, but in a letter dated July 1, 1916, remitted for the March and April amounts; on July 3d, after attention had been called to his May and June delinquencies, he paid for May, and on the 11th of July paid for June. Frequently he inquired if he was paid in full. The July assessment was not brought to his notice and was not paid."

As to reinstatement the by-laws provided:

"Any such suspended member may become reinstated upon the order of the supreme secretary by paying to the local secretary within sixty days from the date of such suspension the amounts due, provided he is in good health at the time of such payments.

"A statement and warranty of health of the applicant for reinstatement must be signed by him, attested by the local secretary, and forwarded to the supreme secretary."

There was a further provision that any member failing to be reinstated within sixty days, then might be reinstated upon a new medical examination within six months. Thereafter he must be received as a new member.

It appears from the records of the secretary that the insured was delinquent as follows:

| Assessment | 117—March, 1914. | Assessment | 139—January, 1916. |
|---|---|---|---|
| " | 129—March, 1915. | " | 141—March, 1916. |
| " | 130—April, 1915. | " | 142—April, 1916. |
| " | 134—August, 1915. | " | 143—May, 1916. |
| " | 136—October, 1915. | " | 144—June, 1916. |
| " | 137—November, 1915. | | |

In each of these instances the insured was reinstated after the last day of the month on which the assessment was due and within sixty days, except that on assessment 142 the reinstatement was made July 5, 1916, more than sixty days after the date of suspension, by paying the assessment and filing with the secretary of the local council the following declaration, countersigned by the secretary of the local organization:

"I, M. C. Phillips, to whom was issued benefit certificate No. —— by the *Fraternal Reserve Association,* have been suspended by reason of nonpayment of assessment No. —— [here was inserted the appropriate number of the delinquent assessment]. I hereby apply for reinstatement on payment of all arrearages.

"I hereby certify and warrant that I am in good health and not engaged in any prohibited occupation.

"I agree that my reinstatement to membership shall be based upon my original application, which is renewed and confirmed by this warranty.          M. C. PHILLIPS."

Upon the findings and undisputed facts the trial court concluded:

"That there had grown up and for years had continued between deceased and defendant the custom and practice of payment by Phillips and acceptance by the defendant of dues and assessments from ten to fourteen days after the last day of each month, contrary to the letter of the by-laws of the defendant.

"That such custom had been substantially universal between said parties, and justified deceased, Phillips, in a reliance upon its continuation at and before the time of his decease.

"That this custom and practice estops the defendant from asserting the so-called automatic suspension of the certificate of deceased, by reason of the nonpayment of the July, 1916, assessment and dues by or before 10 p. m. of July 31, 1916, notwithstanding death ensued on August 2, 1916, before such payment."

Plaintiffs had judgment for the amount of the certificate, $2,000, and from the judgment the defendant appeals.

*E. R. Hicks* of Oshkosh, for the appellant.

For the respondents the cause was submitted on the brief of *D. E. McDonald* of Oshkosh and *Thos. H. Gill* of Milwaukee.

ROSENBERRY, J.   That clause under which the defendant claims the rights of the plaintiffs are forfeited is a self-executing forfeiture provision, and one, therefore, to be sustained by the courts. *Haycock v. Sovereign Camp W. O. W.* 162 Wis. 116, 155 N. W. 923; *Behling v. Northwestern Nat. L. Ins. Co.* 117 Wis. 24, 93 N. W. 800.

The question is whether this positive provision of the contract was, under the circumstances in this case, modified by conduct of the company which was inconsistent with its provisions. *Ramsey v. Travelers' P. Asso.* 147 Wis. 405, 133 N. W. 634, and cases cited.   In the *Ramsey Case* the rule is stated thus:

"Where the conduct of an insurance company with reference to strict observance on the part of the assured of the agreement as to payment of dues, or payment in the particular manner stipulated, is such as, naturally to, and that it in fact does, cause the assured to believe that such performance will not be insisted upon, but that variances therefrom, within the limitations suggested by such conduct, will be regarded by the company as sufficient performance to preserve the integrity of the agreement,—it will be conclusively presumed that the minds of the parties met upon that basis, displacing, to that extent, the letter of the contract; this upon the equitable doctrine of estoppel *in pais.*"

If by the conduct of the parties the contract in respect to

forfeiture was in effect modified, or if, what in practical effect amounts to the same thing, the defendant was estopped by its conduct from asserting its rights under the forfeiture clause, then the rights of the beneficiaries under the certificate were never forfeited, and the insured was not delinquent, because the court found, and the finding is abundantly supported by the evidence, that it was the almost universal practice to accept such payments up to the date of the making of his report by the local secretary, which was from ten to fourteen days after the default occurred. Within that period—as a matter of fact within twenty-seven hours of the time of the default—the insured died.

The difficulty with the position of the plaintiffs is that, with the single exception of assessment 142, each default was relieved within the time and in the manner prescribed by the by-laws. How can it be said that reinstatement in the manner prescribed by the contract operates to modify the contract or to estop the defendant from asserting its rights under other clauses of the contract? The forfeiture clause being a self-executing provision, the contract must be given its full effect; that is, the member is suspended when the default occurs, and the policy is not in force until the member is reinstated in the manner prescribed by the by-laws. The insured died before reinstatement was attempted. At the time of his death, by reason of his default, the policy was not in force and the defendant therefore not liable. The insured was an able lawyer and had had a large experience in insurance matters, and must have understood and appreciated the legal consequences of his acts. If he did not, although the result is harsh, we cannot rewrite his contract so as to create a liability where none existed.

If the insured had attempted to reinstate himself in the customary manner a different situation would exist. There is nothing to indicate that the defendant or the insured ever

regarded the contract as in force during the periods between default and reinstatement. No action on the part of an officer of the local organization or of the defendant company was necessary under the terms of the policy to create a forfeiture. Hence it was immaterial whether the insured was reported delinquent or not. If the default existed, the forfeiture occurred.

*By the Court.*—Judgment reversed, and case remanded with direction to dismiss the complaint.