WILLIS E. HIATT, Appellee, v. UNION MUTUAL CASUALTY COMPANY, Appellant.

No. 39524.

MARCH 12, 1929.

REHEARING DENIED SEPTEMBER 21, 1929.

*Harold S. Thomas,* for appellant.

*John W. Pendy* and *F. L. White,* for appellee.

DE GRAFF, J.—The pivot upon which this case turns is the question whether or not the insurance, under the contract or policy upon which this claim for indemnity is based, applied "to the effects resulting from bodily injury" alleged to have been sustained by the claimant (appellee) on April 10, 1926. Sweeping aside, and without passing upon, the numerous propositions (about 30 in number) presented on this appeal, we will deal solely with the controlling question, which, when answered, will decide this appeal. If the insurance did not apply to the bodily injury alleged to have been sustained by the plaintiff on April 10, 1926, then there is no valid claim for indemnity based on such bodily injury alleged to have been sustained on that date.

The plaintiff applied for accident and sickness insurance to the defendant Insurance Company on April 8, 1924, and in the application, by Statement No. 22 thereof, agreed to accept the policy which was to be issued thereon, subject to all of its provisions, conditions, and limitations, and furthermore, to pay the premium required thereby on or before its due date. The policy was issued and bears date as of 12 o'clock noon central standard time on the 9th day of April, 1924. There was indorsed thereon

or attached thereto a copy of the application, which by the terms of the policy was made a part of such policy. The record in this case clearly shows that the plaintiff accepted such policy, paid the premium required, and was bound by the provisions, conditions, and limitations therein. Among the many provisions in the policy appeared the following:

"Standard Provisions 1. This policy includes the indorsements and attached papers, if any, and contains the entire contract of insurance except as it may be modified by the company's classification of risks and premium rates. 3. If default be made in the payment of agreed premium for this policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from actual injury thereafter sustained, and such sickness as may begin more than ten days after the date of such acceptance."

The insuring agreement of the policy provides as follows:

"In consideration of the statements and agreements contained in the application herefor (copy of which is indorsed hereon and made a part hereof), the payment of nine ($9.00) dollars being the premium in advance for the first quarterly period from twelve o'clock noon central standard time on the 9th day of April, 1924, and of the further payment of nine ($9.00) dollars quarterly thereafter, insures Willis E. Hiatt (hereinafter called the insured) by occupation, police sergeant, traffic officer, riding a motorcycle, classed E-S by the company for periods to correspond to those above set forth, subject to the provisions and limitations herein against (1) The effects resulting directly and exclusively of all other causes from bodily injury sustained during the life of this policy solely through external, violent and accidental means * * * and against (2) disability through sickness which is contracted and begins during the life of this policy and after it has been maintained in continuous force for fifteen (15) days from its date."

The insurance under this policy is to be for successive periods, or, as stated therein, for quarterly periods,—meaning, in simple language, three-months periods. The first quarterly period began at 12 o'clock noon on April 9, 1924, and ended at 12

o'clock noon on July 9, 1924. The succeeding period started on July 9, 1924, at noon, and ended October 9, 1924, at noon. The quarterly periods following in regular order "to correspond to those above set forth," extended up to noon of April 9, 1926. No question has been raised by either party to the appeal as to the history of the foregoing periods.

The money consideration for the insurance for the first quarterly period, beginning April 9, 1924, was the payment of $9.00, it being specifically stated to be "the premium in advance for the quarterly period." It is without question that, had the insured desired to discontinue the insurance at the date upon which the first quarterly period ended, or, for that matter, at the end of any quarterly period thereafter, he could have done so by simply refusing to pay the advance premium for the next quarter. The policy contains no provision which binds the insured to go further than he wants to go, and the life is kept in the insurance by the payment of the required premium at the time and in the manner stated in the policy. The policy clearly recites that further payments of $9.00 quarterly thereafter are for periods to correspond to those above set forth. The language used, without question, means for quarterly periods with the date to correspond with the starting and ending of the first quarterly period, viz.: at noon of April 9 and July 9, 1924.

Under Section 5, Chapter 429, of the Acts of the Thirty-seventh General Assembly (Section 8909, Code of 1924), it is provided that no policy shall be issued by a mutual company, such as here, for a cash premium, without an additional contingent premium, unless the company has a surplus which is not less in amount than the capital stock required of a stock company doing business under the same chapter of our Code as that under which the appellant company operates. In fixing the cash premium of $9.00 for each quarterly period, the company took heed of the law, and provided, under Clause "d" of "Additional Provisions" in the policy, that "the maximum contingent liability of the policyholder hereunder shall be an amount equal to the premium paid for the term for which this policy is written." It is unquestionable that the maximum contingent liability of this insured would be $9.00, as that sum is stated to be the premium for the term for which this policy was written, viz.: "quarterly periods" from the 9th day of April, 1924.

The policy issued to Willis E. Hiatt by the appellant company granted insurance subject to the payment of the quarterly premiums. Such quarterly periods after the initial, or first, must correspond to the first quarterly period, which started at 12 o'clock noon on April 9, 1924, and ended at 12 o'clock noon on July 9, 1924.

It is a provision of the policy that a premium of $9.00 shall be paid for each quarterly period. The premium for the first quarterly period was to be paid in advance, and it is stated that the further payments of $9.00 shall be made quarterly thereafter, obviously meaning that they shall be paid in advance of the periods, to correspond with that of the first quarter, unless otherwise provided in the policy, or under a waiver by the company. Scanning the policy introduced in the record of this case as plaintiff's Exhibit A, this court finds no provision therein which modifies the requirement of advance premium payments, or a waiver thereof, except in Clause "e" of "Additional Provisions," which states that, if any obligation is received and accepted in lieu of cash for the payment of premiums, and the obligation is not paid when due, after complying with the statutory provisions as to written notice to the policyholder, the policy and the insurance shall terminate and become void at 12 o'clock noon of the day when such obligation shall become due and unpaid, and shall remain void until payment has been accepted and notice of reinstatement has been given by the president or secretary.

In the instant case, there is no evidence in the record that any obligation was received or accepted in lieu of cash for the premium payments due from the appellee, except on November 12, 1926, which in no way affects the issue herein.

The contract plainly provides that, if default be made in the payment of the agreed premium for the policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained, and such sickness as may begin more than ten days after the date of such acceptance. This is a salutary and wise provision, and prevents imposition on the company.

There is nothing in our law which prohibits a person from securing accident and sickness insurance for any term or period

that he may desire, provided that a company engaged in that business will underwrite such insurance. There is nothing in our law or against public policy which prohibits an insurance company from granting such insurance for any term or period. It is a well known fact that accident insurance is issued to cover one day, three months, or a year, and that such insurance may be extended to cover successive periods under certain conditions. It is not unusual for an accident and sickness insurance to be granted to cover only three months, or a succession of periods of three months.

The appellee in the case at bar received and accepted a quarterly or three-months policy, which, by its provisions, could be extended to cover additional periods, to correspond to the initial period. The payment in advance of the premium called for was the consideration for the extension of the insurance for a succeeding period. These periods were fixed by dates, and those dates, indicating the duration of a quarterly period, must correspond to the initial date of the first period. There was no irregularity whatever in thus fixing the start and end of each period by the provisions of the contract. Appellee could have terminated the insurance by defaulting in the payment of the required premium, or he could have kept the insurance in full force and effect by paying the required premium. The date of payment was the deciding factor. There is nothing in our law or in public policy forbidding insurers to contract with their policyholders that premiums for insurance must be paid in advance, and that, in default of such advance payments, the insurance will terminate upon such default. This is a usual and a necessary practice.

The evidence, as disclosed by the record, shows that Hiatt did not pay in advance the premium of $9.00 due on or before the commencement of the quarterly period starting at 12 o'clock noon, April 9, 1926. He was therefore in default, and subject to Clause 3, "Standard Provisions," of the policy which he had received and accepted, and was bound under the conditions, provisions, and limitations thereof. The evidence is clear that Hiatt paid a premium of $9.00 on April 26, 1926; and, by the provisions of said Clause 3, "Standard Provisions," the payment on such date thereby operated to extend the insurance from that date, and to run until the end of the quarterly period ending on July 9, 1926, at 12 o'clock noon. There was no provision in the

policy which would make that payment retroactive in effect, so as to reinstate the insurance from the beginning of the period at noon of April 9, 1926, the time it terminated, up to April 26, 1926.

In the case of *Phenix Ins. Co. v. Bachelder*, 32 Neb. 490 (49 N. W. 217) the policy provided that:

"In case the assured fails to pay the premium note, or order, at the time specified, then this policy shall cease to be in force and remain null and void during the time said note or order remains unpaid after its maturity, and no legal action on the part of this company to enforce payment shall be construed as reviving the policy. The payment of the premium, however, revives the policy, and makes it good for the balance of its term."

The Supreme Court of Nebraska, in the opinion supra, said:

"It is obvious that the failure to pay the premium note at maturity suspended the policy until payment was made. It could have been revived for the balance of the term by making full payment at any time before the loss. This, as we have seen, he failed to do. * * * Nothing short of full payment, or a waiver of the stipulation in the policy, could have the effect to remove the suspension caused by the failure to pay the note. The clause referred to is not unreasonable. It is but fair and just that, when the insured is in default of the payment of his note, the company should not be liable for loss when the parties have so agreed. We have no right to make a new contract for them, or refuse to enforce the one they have made. To hold that the policy was in force at the time of the fire would be to set aside and disregard the plain stipulation of the parties" (citing *Gorton v. Dodge County Mut. Ins. Co.*, 39 Wis. 121; *Shakey v. Hawkeye Ins. Co.*, 44 Iowa 540).

See, also, *Matthews v. Travelers' Ins. Co.*, 73 Ore. 278 (144 Pac. 85); *Gagne v. Massachusetts Bond. & Ins. Co.*, 78 N. H. 439 (101 Atl. 212).

If the company had so desired, it could have, without violence to any provisions of the contract, refused to accept the payment made on April 26, 1926, and who could have claimed that the insurance was in force and effect? To reinstate the insurance after a default in the payment of a required premium, there were

two things necessary: (1) the payment of the premium, and (2) the acceptance of such payment by the company or by any of its duly authorized agents. But such acceptance did not abrogate or modify any of the provisions of the contract. In fact, there was a particular provision to govern just such a case. No one can complain of a specific provision in a contract intended to cover a particular condition when he has accepted that pro-· vision as a part of the contract. Hiatt had a duty imposed upon him under· the policy, just as the company had duties imposed upon it. Hiatt's duty was to pay the premium in such sum and on such a date as the contract provided, if he desired to retain the benefits of the insurance. There was nothing compulsory about it, unless he wanted to keep the insurance in force and effect.

The appellee alleged that he sustained an injury on April 10, 1926,, and makes a claim on the appellant company for indemnity for loss occasioned by such injury on that date. It is not shown by the record that the company was notified of that alleged injury on or before April 26, 1926, the date of the payment of the premium. Whether the company had knowledge or not of any such injury on April 26th, when the payment was received, that knowledge did not in any manner act as a waiver of the default in the payment of the premium when it became due.

We therefore hold that the record on this appeal clearly establishes the fact that the insurance under the policy issued to the appellee by the appellant was not in effect on April 10, 1926, the date of the alleged injury. The trial court should have sustained the motion made by the appellant at the close of all the evidence, and should have sustained the motion of the defendant for·a new trial.

The judgment entered is—*Reversed.*

ALBERT, C. J., and FAVILLE, MORLING, and WAGNER, JJ., concur.