BALOGH *v.* SUPREME FOREST WOODMEN CIRCLE.

1. FRATERNAL BENEFICIARY SOCIETIES—PAYMENT OF DUES—SUSPEN-
    SION—NOTICE AS TO REINSTATEMENT—CONSTRUCTION OF CONTRACTS
    —COURSE OF PRACTICE.

    Insurance contract between foreign fraternal beneficiary society
        and its member providing that if latter failed to pay dues
        "on or before the first day of the following month, the member
        shall stand suspended" and that no officer, employee or agent
        could change, vary or waive any provisions is construed as self-
        executing and automatically accomplishing suspension of mem-
        ber for such failure without further action by either local or
        national officers of the organization, notwithstanding another
        provision for sending notice as to rights as to reinstatement
        to suspended members by national secretary upon receipt of
        report by local financial secretary of failure of members to pay
        dues and course of practice of accepting payments during the
        following month.

2. SAME — SUSPENSION — REINSTATEMENT — ACCEPTANCE OF DELIN-
    QUENT DUES—WAIVER.

    Under insurance contract between foreign fraternal beneficiary
        society and its member providing for automatic suspension of
        members for failure to pay dues on first of following month
        and for absolute right to reinstatement by paying delinquency
        within three months from date of suspension providing member
        was then in good health, acceptance of delinquent dues during
        the following month *held,* not to affect provision as to suspen-
        sion nor to constitute a waiver of anything.

3. SAME—SUSPENSION—REINSTATEMENT—GOOD HEALTH.

    Foreign fraternal beneficiary society's member who stood auto-
        matically suspended on second day of month following that
        for which dues were not paid *held,* not reinstated by payment
        of delinquent dues on 18th day of such subsequent month where
        she was so ill with secondary bronchial pneumonia that she died
        two days later and insurance contract provided that reinstate-
        ment was effective upon payment of delinquent .dues only if
        member were in good health.

4. SAME—REINSTATEMENT—WAIVER OF HEALTH PROVISION—SPECIAL QUESTIONS.

> Reinstatement of suspended member of fraternal beneficiary society *held*, not effected by payment of delinquent dues where member was not then in good health and record is devoid of evidence to support finding of jury in answer to special question that defendant waived provision preventing reinstatement of a member in ill health.

5. APPEAL AND ERROR—FINDINGS—EVIDENCE.

> A finding of the jury cannot stand when the record is devoid of evidence to support it and is not binding even upon party who submitted special question as a basis for such finding.

Appeal from Wayne; Chenot (James E.), J. Submitted April 6, 1938. (Docket No. 21, Calendar No. 39,932.) Decided June 6, 1938.

Action by Nicholes Balogh and others against Supreme Forest Woodmen Circle, a Nebraska fraternal beneficiary society, for benefits due on a death benefit certificate. Verdict for plaintiffs. Judgment for defendant *non obstante veredicto*. Plaintiffs appeal. Affirmed.

*Henry Stone,* for plaintiffs.

*Joslyn, Joslyn & Joslyn,* for defendant.

CHANDLER, J. Plaintiffs are beneficiaries under a certain death benefit certificate issued to Julia Karacsony, deceased, by the defendant fraternal beneficiary society, organized under the laws of Nebraska and doing business in this State. Deceased was a member of defendant from 1917, and, it is claimed by plaintiffs, continued to be a member until the date of her death on July 20, 1935. The secretary of the local branch or grove was notified of the death on July 22, 1935, by plaintiff Nicholes Balogh who demanded payment of the death benefits

and was told that the same would be paid within a few days. In November or December, 1935, defendant notified plaintiffs that it refused to pay the amount provided by the benefit certificate for the reason that deceased was not a member in good standing at the time of her death, having failed to pay her membership dues for the month of June, 1935, in the month that they became due.

Trial resulted in a verdict for plaintiffs. This appeal is taken from the order of the trial court granting defendant's motion for judgment *non obstante veredicto*.

Defendant denies liability on the ground that the deceased stood suspended at the time of her death, the June, 1935, dues not having been paid until July 18, 1935, and that such payment did not operate as a reinstatement under the provisions therefor inasmuch as deceased was not then in good health, it being undisputed that at that time she was afflicted with secondary bronchial pneumonia which resulted in her death two days later. After discovering deceased's physical condition, the payment made on July 18, 1935, was tendered back by defendant but was refused.

The agreement between deceased and defendant contained the following provisions, among others:

"Every member of this society, unless otherwise notified, in the manner herein provided shall pay to the financial secretary every month one monthly payment in such amount as is shown by the beneficiary certificate of such member and the laws of the society applicable to such certificates, without notice, also any additional monthly payment which may have been ordered by the national president, which shall be credited to and known as the Supreme Forest Fund; and if he or she fails to pay same on or before the first day of the following month, the mem-

ber shall stand suspended, except as otherwise provided in the certificate, and during such suspension his or her benefit certificate shall be void and the contract between such person and the society shall thereby completely terminate. * * *

"A suspended member, if in good health, may become reinstated by paying all arrearages and dues to the financial secretary of the Grove within three months from the date of suspension, provided said payment shall be held to warrant that he or she is at the time of making such payment in good health and to contract that such monthly payment when so paid after suspension shall be received and retained without waiving any of the provisions of this section or of these laws until such time as the national secretary shall have received actual (not constructive or imputed) knowledge that the person was not in fact in good health when he or she attempted to reinstate. Provided further that the receipt and retention of the payment of such monthly payments, in the event such person attempting to reinstate is not in good health, shall not reinstate such person or entitle the member or the beneficiary or beneficiaries to any rights whatever. * * *

"No officer, employee or agent of the Supreme Forest Woodmen Circle, or any Grove, has the power, right or authority to waive any of the conditions upon which benefit certificates are issued, or to change, vary or waive any of the provisions of this constitution or these laws."

Plaintiffs seek to avoid the effect of these provisions by showing that by a long course of practice suspension did not follow if membership dues were not paid until the month following that in which they became due, and that therefore the provisions relative to the time of payment and suspension were waived.

Several witnesses were produced by plaintiffs who testified as to a practice of the local grove secretary

existing during 1934 and 1935 of accepting past due payments, it being claimed that suspension did not result therefrom, among whom was deceased's son who stated:

"I paid the dues for one month and sometimes I paid for two months' dues in one month. I paid more than once for two months' in one month."

The president of the local grove of which deceased was a member testified:

"Our grove had its business meetings during the year of 1934 and 1935 on every third Sunday each month. The business transacted at the meetings was the collection of dues, the initiation of new members, and all other affairs that would come up were disposed of. The secretary sends cards to members and notifies them that they have not paid their monthly dues. These notices are sent 15 days after the meeting. After the meeting is over we allow 15 days for members to bring in the money because we have 15 days before we have to send the money to the home office. But if a member has not paid the monthly dues, say, in February, the member was permitted to pay the monthly dues at the next meeting in March; at the next meeting the following month.

"*Q.* During that time did you suspend the member who has not paid at the February meeting?

"*A.* No."

As we have previously stated there was testimony of other witnesses who were members of the society as to the practice of permitting payment of dues in the month following that in which they became due, it being claimed that suspension did not result. It was apparently common practice to make payment at any time before the 15th of the following month, at which time the local secretary reported to the main office.

The records of the financial secretary of the grove disclosed that in the year 1934 every payment due from deceased was paid within the month in which it became due. In 1935, all payments were likewise made with the exception of the April payment which was made on May 1, 1935, the May payment which was made on June 10th, and the June payment which was made on July 18th, two days before the death of the insured.

The report made by the financial secretary of the local grove to the national officers, dated July 12, 1935, indicated that 15 members of this particular lodge had failed to pay the dues for the month of June and were still delinquent at the time the report was made.

The claim that suspension did not result because of failure to comply with the rules as to the time of payment is apparently founded upon the theory that some action, either by the local grove officers or the national officers, was necessary to accomplish suspension of a member. We do not so construe the insurance agreement.

Members had until the first of the following month in which to pay the dues for any particular month. To illustrate by the instant case, the June dues could be paid at any time on or before July 1st. If not paid on or before the date mentioned, the member stood suspended without further act of the local lodge or the national officers. The provision of the insurance agreement pertaining to suspension for nonpayment of dues was self-executing. The operation of this provision was in no way affected by the notice of suspension provided by section 14 (f) as follows:

"As soon as the required monthly report has been received from a Grove she (national secretary)

shall mail a notice to the last known address of every member reported suspended in said report, informing him or her of the requirements of the laws of the society to become reinstated, but the failure to send such notice shall in no way affect this legal suspension of such member."

When the member failed to pay her monthly dues on or before the first of the following month, he or she stood automatically suspended from and after that date by operation of the terms of the insurance contract, and without action by the national or local officers.

The practice of accepting payments after the first of the following month in no way affected the provision as to suspension. Under the express terms of the agreement, suspended members had an absolute right to reinstatement by paying the delinquency within three months from the date of suspension, providing the member was then in good health. It is therefore clear that acceptance of delinquencies in the following month was an act that defendant was bound to perform under the very terms of the insurance contract. The member thereby became automatically reinstated, if then in good health. We fail to see how the performance of an act by defendant's local officers, which they were expressly bound to do, could be a waiver of anything.

*Wallace* v. *Fraternal Mystic Circle,* 121 Mich. 263, cited by plaintiffs is distinguishable. A fair interpretation of the laws governing suspension in that case leads to the conclusion that the provisions were not self-executing but that some further act on the part of the local officers was required to accomplish this result. The laws there provided that, "the worthy ruler may announce the suspension at the next meeting of the subordinate ruling."

In *Staffan* v. *Cigarmakers' International Union of America,* 204 Mich. 1, also cited by plaintiffs, the member for a long period of time was permitted to make delinquent payments long after he was entitled to do so as a matter of right under the section of the constitution applicable thereto.

A case similar in many respects to the case at bar is *Phillips* v. *Fraternal Reserve Ass'n,* 171 Wis. 143 (176 N. W. 851), wherein it is said:

"The difficulty with the position of the plaintiffs is that with the single exception of assessment No. 142, each default was relieved within the time and in the manner prescribed by the by-laws. How can it be said that reinstatement in the manner prescribed by the contract operates to modify the contract or to estop the defendant from asserting its rights under other clauses of the contract? The forfeiture clause being a self-executing provision, the contract must be given its full effect; that is, the member is suspended when the default occurs, and the policy is not in force until the member is reinstated in the manner prescribed by the by-laws. The insured died before reinstatement was attempted. At the time of his death, by reason of his default, the policy was not in force, and the defendant therefore not liable. The insured was an able lawyer, and had a large experience in insurance matters and must have understood and appreciated the legal consequences of his act. If he did not, although the result is harsh, we cannot rewrite his contract so as to create a liability where none existed.

"If the insured had attempted to reinstate himself in the customary manner, a different situation would exist. There is nothing to indicate that the defendant or the insured ever regarded the contract as in force during the periods between default and reinstatement. No action on the part of an officer of the local organization or of the defendant company was

necessary under the terms of the policy to create a forfeiture. Hence it was immaterial whether the insured was reported delinquent or not. If the default existed, the forfeiture occurred."

See, also, *Koehler* v. *Modern Brotherhood of America,* 160 Mich. 180 (136 Am. St. Rep. 424); *Elder* v. *Grand Lodge Ancient Order United Workmen,* 79 Minn. 468 (82 N. W. 987).

Deceased stood automatically suspended from July 2, 1935, unless she was reinstated by the payment on July 18th. It is conceded that deceased was in ill health on the date last mentioned and under an application of the terms of the contract payment of the delinquency at that time would not accomplish a reinstatement. It is claimed, however, that there was a waiver of this provision. The record discloses no evidence whatsoever tending to establish that reinstatement had ever been made by payment of delinquencies when the member was then in ill health. The following special question was submitted to the jury by defendant and answered in the affirmative:

"Did the defendant association waive the provisions of its constitution, laws, and by-laws which prevent the reinstatement of a suspended member who is not in good health at the time of reinstatement?"

Plaintiffs claim that defendant, having submitted the question, is conclusively bound by the answer. A finding of the jury cannot stand when the record is devoid of evidence to support it. *Turner* v. *Phoenix Ins. Co. of Hartford,* 55 Mich. 236.

Judgment affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred.