AMERICAN INS. CO. OF TEXAS v. ESTES.

No. 1994.

Court of Civil Appeals of Texas. Eastland.

May 10, 1940.

Rehearing Denied June 14, 1940.

460

to recover for the accidental death of her husband on October 10, 1937. The defendant denied liability. At the conclusion of the trial, the court instructed a verdict for the plaintiff. The company appeals. The parties will be referred to as in the trial court.

The defendant is a mutual insurance association, operating in the State under provisions of Art. 4859f, Vernon's Ann.Civ.St., and is not governed or affected in any way by the general insurance laws of the State. Art. 4859f, sec. 19.

The policy insured against the loss of life, etc., resulting directly and independently of all other causes from bodily injuries sustained through purely accidental means during the effective term of the policy, subject to certain provisions and limitations enumerated in the policy, and it provided that if the insured sustained such injuries, and as the result therof lost his life, the company would pay the beneficiary $2,500 in monthly installments of $100 each.

The first provision of the policy is as follows:

"American Insurance Company

\* \* \* \* \* \*

does hereby insure

/Insuring Clause/    Dr. J. M. Estes, Sr., whose occupation is physician and surgeon, and whose beneficiary is Mrs. Ethel Reagan Estes, wife, against *loss of life*, limb, sight or time, resulting directly and independently of all other causes, from bodily injuries sustained through purely accidental means \* \* \* during the term of this policy, respectively, subject, however, to all the provisions and limitations hereinafter contained.

Accident Indemnities

/Part A.      Specific Losses

If the insured *sustains injuries* as directed in the Insuring Clause, which shall, independently and exclusive of disease and all other causes, continuously and wholly disable the insured and result in any of the following specific losses within 90 days from date of accident causing *said injury*, the company will pay: for *loss of life* \* \* \* the principal sum."

Percy C. Fewell, of Dallas, for appellant.

Kirby, King & Overshiner, of Abilene, for appellee.

LESLIE, Chief Justice.

Mrs. Ethel Reagan Estes, beneficiary under a health and accident insurance policy issued by the American Insurance Company to her husband, Dr. J. M. Estes, instituted this suit against that company

(Italics in the opinion ours.)

The foregoing is the policy's only promise of indemnity for the loss of life.

Other provisions of the policy material to the questions to be decided will be set out as the opinion proceeds. One such provision is paragraph H, under Addition-

al Provisions: "This policy is issued in consideration of the application of the insured, and the due payment and acceptance, on or before delivery hereof, of $9.00 which included the first quarterly premium hereon, and also the payment on or before the first day of April, 1937, *and the further payment on or before each premium date thereafter, of any premium shown in either premium table hereon* * * *."

Said premium table provided for payment of premiums quarterly, semi-annually or annually. It is undisputed that the deceased elected to pay his premiums quarterly on the first of the month.

In the absence of any other provision said premiums were due April 1, July 1, and October 1, 1937. Plaintiff and defendant are agreed that a quarterly premium fell due October 1, and plaintiff also recognizes the fact that said premium was not paid on its stipulated due date. That is the material date and premium involved.

Unless some other fact or provision of the policy permitted payment of such premium on another date the protection of the policy lapsed or ceased to exist under its own terms as a result of the failure of Dr. Estes to pay, on its due date, the premium falling due October 1, 1937. That payment was not mailed to the company until October 6, 1937, but it was received and accepted by the company as a reinstatement (October 7, 1937) of the policy as provided therein.

Paragraphs (C) and (D) "Additional Provisions" of the policy are, respectively, as follows:

"(C) In the event the premium charged herefor shall prove inadequate additional assessments may be run or the amount of premiums increased to such extent as may be necessary to enable the company to make full payment of all claims * * *."

"(D) The date of payment of premiums shall be as indicated from the date of issue of policy [in this case on January 1, 1937, making his premiums due April 1, July 1, and October 1, 1937 on stipulated assessments] or fifteen days from date notification is mailed in Dallas, Texas [this being intended to cover additional assessments, none of which were made in this case] and the company assumes no responsibility for failure to send such notices, or for non delivery of same, and no offer of reinstatement after due date of any premium shall be held a waiver of this condition. Any premiums received after the due date may be accepted as a reinstatement, and upon the insured being in good health and free from any injury or sickness, and in lieu of a health certificate at the time of the company's acceptance, and *the company will not be liable for any disability originating before the expiration of fifteen days after reinstatement* * * *."

Proper effect given to the above provisions C and D permits but one construction, and that is, that *stipulated* quarterly premiums fell due on the first of each of said months and additional assessments, if any, (and none are involved in this case) would be due fifteen days from the date of the mailing of notices of such assessments.

The parenthetical expressions are inserted in paragraph D as an interpretation of the contentions of the parties, as well as the record in such respect. Since the defendant is a mutual insurance company, and both permitted and required, under certain circumstances, to make additional assessments in the event stipulated premiums proved inadequate, paragraph D was evidently included in the policy to provide for such contingency.

Other material provisions of the policy are as follows: "(E) The *term* of this policy begins at 12 o'clock noon, Standard Time, on date of delivery (January 1, 1937) to and acceptance by the insured against accident and *ends* at 12 o'clock noon on date any renewal is due."

The policy provides for no grace period and it is obviously a term insurance contract.

A standard provision of the policy is: "(3) If default be made in payment of the agreed premium for this policy, the subsequent acceptance of the premium by the company or any of its duly authorized agents shall reinstate the policy, but *only to cover accidental injury thereafter sustained more than fifteen days after the date of such acceptance."*

As noted, the stipulated premium (of October 1,) received October 6th was accepted by the insurance company and treated by it as a reinstatement of the policy, making it effective to cover accidental injury received after, but not

before, October 22, 1937. Such, at least, is the defendant's contention.

On the other hand, the plaintiff bases her right to recovery on the proposition that the insured was killed instantly and by accidental means on October 10, 1937, and that her suit is not for "injury", but is one for accidental death, to which above provision "(3)" of the policy with reference to reinstatement has no application. The defendant counters with the contention that on October 10 (time of accident) the policy did not cover accidental injuries, whether the result was fatal or nonfatal. That is, for death resulting from an accident within the 15-day period following the reinstatement the policy provided no coverage.

In the light of these contentions and the above provisions of the policy it is clear that protection of the policy ended on the failure of Estes to pay the quarterly premium due October 1. Its acceptance October 7th had no effect except to reinstate the policy for another term, but without coverage until October 22. The unfortunate accident occurred October 10, well within the 15-day period following reinstatement.

Giving further and more specific attention to the contention, we are of the view, as asserted by the defendant, that such contentions, if allowed, would defeat plaintiff's own purpose. If plaintiff's theory be tenable, and "accidental death" is not accidental injury (under the policy) then the trial court's instructed verdict would be erroneous because under the terms of the policy the insurer did not promise to pay anything for "accidental death", and the policy merely provided for acceptance of the payment as a reinstatement covering "only accidental injuries thereafter sustained more than fifteen days after the date of such acceptance." That such result would follow, or be the logical conclusion from such theory, is evident from the policy's only promise of indemnity for the loss of life, which promise, in part, is here restated: "If the insured *sustains injuries* as described in the Insuring Clause, which shall, independently and exclusive of disease and all other causes, continuously and wholly disable the insured and result in any of the following specific losses within 90 days from the date of accident causing said injury, the company will pay: for loss of life * * * the principal sum."

Be that as it may, we think there is sound authority for the proposition that accidental death suffered by the insured was an injury within the meaning and terms of the policy precluding recovery when the same occurred within the 15-day period following reinstatement of the policy.

In Standard Life & Accident Ins. Co. of Detriot, Mich. v. McNulty, 8 Cir., 157 F. 224, 225, such contention was disposed of in this language:

"It is obvious that there are two classes of injuries. Those that are fatal, and those that are not fatal. The word 'injuries' is a generic term, and it naturally includes injuries of both classes, because no one of either class is not an injury. Again the word is known by its associates and by the sense in which it is used in other parts of the same contract or in similar agreements. The first sentence of the policy reads that the company 'hereby insures the person whose name is entered upon the stub of this ticket * * * against loss of time resulting from bodily injuries * * *'; (A) to the amount of $2,500 if death results from such injuries within 90 days * * *.

"It is clear that the word 'injuries' in the first sentence of the policy which specifies the risks against which the insured is indemnified includes both those that are fatal and those that are not so, for the amount of the indemnity for the former is specified in class (A) and the amount for the latter in class (B)."

Upon another contention, that of proper construction of the language of the policy alleged to be ambiguous, the following additional portion of the opinion will be stated: "Counsel for the plaintiff invoke the familiar rule that a policy of insurance should be construed favorably to the insured in cases of doubt or ambiguity. But this rule ought not to be permitted to have the effect to make a plain agreement ambiguous, and then to interpret it in favor of the insured. 'Contracts of insurance like other contracts are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary

and popular sense.'" Citing many authorities.

On the first contention we take from Ritchie v. Standard Surety & Casualty Co. of New York, 257 App.Div. 545, 13 N.Y.S.2d 1022, 1023, the following:

"It is the contention of the plaintiff that the defendant did not intend the word 'injuries' to cover death, and that the policy is ambiguous. I am not impressed with this argument. To recover under the policy, death or disability must occur from injuries within the limitations of the provisions of the policy. I am not unmindful of the rule that where the terms of an accident insurance policy are ambiguous or subject to different construction, it must be liberally construed in favor of the insured. But I find no ambiguity in the insuring clause nor in the subdivision of the General Provisions which specifically provides that it 'does not cover any injuries sustained without the limits of the United States or Canada.'

"Giving the policy the most liberal construction in favor of the insured, the insurer should not be held liable. An insured cannot reasonably expect indemnity outside the limitation of his contract and where there is no ambiguity, there is no occasion for the exercise of choice of interpretation, and the policy will be construed according to the plain and ordinary meaning of its terms."

To the same effect, and well in point, we cite Robyn v. New Amsterdam Cas. Co., Mo.App., 257 S.W. 1065.

In reference to the October first premium, the defendant offered testimony that on September 14, 1937, it mailed notice to the plaintiff that said premium would fall due October 1, 1937, and, on the other hand, the plaintiff offered testimony that the insured received a notice on *October 5* that said premium *was* due on the previous date, *October 1*. The beneficiary makes no contention that such notice was mailed prior to October 1.

■ In the disposition we make of this appeal any question of notice becomes immaterial. The premium (October 1) involved and in default was a stipulated quarterly premium and not one based on any extra assessment, notice of which would be necessary to advise the insured that such an assessed premium would be due "fifteen days from date of notification (of same) is mailed in Dallas, Texas." The defendant was not, under the terms of the policy, obligated to give notice of the premium falling due October 1, and if it gave such notice it was in the interest of the insured and had he received notice October 5 (as plaintiff claims) it would merely have called to the insured's attention his privilege of reinstating the policy. Such notice, if given, would, in effect, have invited a reinstatement of the policy, under the terms of which the insured, and not the insurer, had the privilege of deciding whether or not a new term of insurance would be applied for by the payment of the premium in default. By failing to pay the premium when due the plaintiff could have discontinued the insurance at any due date and neither party would have had an obligation of any kind, and the term of insurance theretofore paid for would have ended without the necessity of any notice whatever. Only payment of the premium on stipulated time kept life in the policy.

However, the policy which the insured elected to reinstate provided that the insurer then had the option to reject or to accept the deferred payment. The defendant company would have done no violence to any provision of the contract had it elected to reject the deferred premium. Hiatt v. Union Mut. Casualty Co., 208 Iowa 974, 224 N.W. 53.

■ Neither do we find any evidence of waiver or estoppel in matter of premium payment. True, the plaintiff paid two other premiums after due date, but such payment, and the company's acceptance thereof, amounted to no more than a reinstatement of an expired term policy. There was after each default and the later acceptance of stipulated premium the possibility of the occurrence of an uncovered accidental injury during the 15 days following each reinstatement; but it so happened in the prior defaults no accident occurred and nothing came of them. Such is not the case with reference to the premium due October 1 and its later acceptance with the consequent reinstatement of the policy as of October 7, 1937, for the reason the fatal accident occurred within the 15 days following. This illustrates all too well the hazard taken each time in failing to pay the stipulated premium when due and the penalty following such oversight or neglect.

Further, the policy sued on provided that no offer of reinstatement should be held to be a waiver of premium payment date, etc., and also provided that payments after default were to be treated as reinstatements, making the policy effective to cover injuries sustained more than 15 days thereafter. The late payments were treated as reinstatements in strict complaince with the plain terms of the contract which were known to the parties thereto. There is no evidence that the insured was in any way misled by insurer's acceptance of premiums in default and voluntarily tendered, and under such circumstances no custom was established and no right voluntarily relinquished prejudicial to the defenses asserted. The following authorities sustain our conclusion on the point. Phillips et al. v. Fraternal Reserve Ass'n, 171 Wis. 143, 176 N.W. 851; Hiatt v. Union Mut. Cas. Co., 208 Iowa 974, 224 N.W. 53; The Praetorians v. Krusz, Tex.Com. App., 58 S.W.2d 27; Sovereign Camp, W. O. W. v. Moraida, 131 Tex. 250, 113 S.W.2d 177; Sovereign Camp, W. O. W. v. Alston, Tex.Civ.App., 82 S.W.2d 710; Rice v. Grand Lodge, etc., 103 Iowa 643, 72 N.W. 770; Crossman, Administratrix v. Massachusetts Benefit Ass'n, 143 Mass. 435, 9 N.E. 753.

In the Phillips case, supra, the Supreme Court of Wisconsin, considering the question of waiver and estoppel under similar policy and circumstances, where all the stipulated assessments due had been paid or relieved except one, and the contention was made that a custom of accepting delayed premiums, etc., estopped the defendant from invoking the automatic suspension provision in the contract of insurance, held, in part, as follows [171 Wis. 143, 176 N.W. 853]:

"That clause under which the defendant claims the rights of the plaintiffs are forfeited is a self-executing forfeiture provision, and one, therefore, to be sustained by the courts. * * * The question is whether this positive provision of the contract was, under the circumstances in this case, modified by the conduct of the company which was inconsistent with its provisions. * * *

"The difficulty with the position of the plaintiffs is that with the single exception of assessment No. 142, each default was relieved within the time and in the manner prescribed by the by-laws. How can it be said that reinstatement in the manner prescribed by the contract operates to modify the contract or to estop the defendant from asserting its rights under other clauses of the contract? The forfeiture clause being a self-executing provision, the contract must be given its full effect; that is, the member is suspended when the default occurs, and the policy is not in force until the member is reinstated in the manner prescribed by the by-laws. * * * At the time of his death, by reason of his default, the policy was not in force, and the defendant therefore not liable."

In the instant case the acts of the parties are all consistent with the provisions of the policy and the principle applied in the above case is applicable.

The Hiatt case, supra, involved a policy providing that in case the assured failed to pay the premium note at the time stipulated, the policy would cease to be in force and remain null and void during the time said note or order remains unpaid after its maturity, etc. The policy stipulations authorizing reinstatement are in principle the same as in this case. In part the court held [208 Iowa 974, 224 N.W. 54]:

"The contract plainly provides that if default be made in the payment of the agreed premium for the policy, the subsequent acceptance of a premium by the company or by any of its duly authorized agents shall reinstate the policy, but only to cover loss resulting from accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance. This is a salutary and wise provision and prevents imposition on the company. * * *

"The payment, in advance, of the premium called for was the consideration for the extension of the insurance for a succeeding period. These periods were fixed by dates, and those dates, indicating the duration of a quarterly period, must correspond to the initial date of the first period. * * *

"The payment of the premium, however, revives the policy and makes it good for the balance of the term. The Supreme Court of Nebraska in the opinion, supra (Phenix Ins. Co. v. Bachelder, 32 Neb. 490, 49 N.W. 217, 29 Am.St.Rep. 443], said: 'It is obvious that the failure to pay the premium note at maturity suspended the policy until payment was

made. It could have been revived, for the balance of the term, by making full payment at any time before the loss. This, as we have seen, he failed to do. * * *

"'It is but fair and just that, while the insured is in default of the payment of his note, the Company should not be liable for the loss when the parties have so agreed. We have no right to make a new contract for them, or refuse to enforce the one they have made.' * * *

"If the company had so desired it could have, without violence to any provisions of the contract, refused to accept the payment made on April 26 [in the instant case, October 7], and who could have claimed that the insurance was in force and effect."

We believe the foregoing authorities state and apply sound principles of law applicable to the undisputed facts of this case. We discover no ambiguity in the terms of the policy warranting an interpretation extending a right of recovery to the beneficiary based upon an accidental injury resulting in death October 10, 1937, a date within the 15-day period following the reinstatement of the policy. "Accidental injuries" covered by the Insuring Clause of the policy includes accidental injuries resulting in death, as well as such injuries not so resulting.

For the reasons assigned, the judgment of the trial court is reversed and judgment is here rendered for appellant.